THE MISSISSIPPI MILLS v. W. W. COOK, TAX-COLLECTOR.

1. TAXATION. *Exemption of corporations. Intendment of sect. 13, art. 12, of
   the State Constitution.*
   Sect. 13, art. 12, of our State Constitution declares that "the property of all
   corporations for pecuniary profits shall be subject to taxation, the same as that
   of individuals." This section was not intended to confer power on the Legisla-
   ture to tax property of corporations of the class mentioned, for that existed
   without this section, as an inherent legislative power. It was not intended to
   require the taxation of property of corporations whose charters, previously
   granted, secured them from taxation, for this was beyond the power of the
   framers of the Constitution. It was not designed to establish the rule that all
   corporations for pecuniary profits must always be taxed; nor was it intended
   to exempt from taxation the property of corporations other than those for
   pecuniary profits.

2. SAME. *Exemption of corporations. Sect. 13, art. 12, of State Constitution, construed.*

Sect. 13, art. 12, of the State Constitution does not declare that the property of all corporations for pecuniary profits shall be *subjected* to taxation, but that it shall be "subject" to taxation, — that is, liable to taxation. And it makes such property subject to "taxation the same as that of individuals;" so that, subject to the twentieth section of the same article, the Legislature may at all times impose taxes on the property of such corporations, just as it may on the property of individuals. Sect. 13 fixes beyond legislative act the condition of the property of such corporations as being liable to the exercise of the taxing power at the will of the Legislature, and as subject to the same taxation that the property of individuals may be subjected to. The Legislature may exempt property of a particular class, whether the owners be corporations or natural persons. But the property of corporations for pecuniary profits cannot be placed beyond the reach of the taxing power. It may not be taxed, but it must be ever liable. It need not be *subjected*, but it must always be "subject," to taxation, the same as that of individuals. The provision is *mandatory* as to the universal liability of such property to be taxed, but *permissive* to the Legislature to tax it or exempt it, as may seem proper, in common with the property of individuals. CHALMERS, J., dissented.

3. SAME. *Exemption. Sect. 20, art. 12, of State Constitution, construed.*

Sect. 20, art. 12, of the State Constitution provides that: "Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law." The first clause of this section establishes the rule of equality and uniformity as to taxation throughout the State, and the latter clause requires that all property shall be taxed in proportion to its value. The words "all property shall be taxed in proportion to its value" do not require that *all* property shall be taxed, and deny to the Legislature the right to exempt any. The purpose of their employment is to fix the rule for taxation, and to protect against any taxation of property except in proportion to its value, to be ascertained as directed by law. This provision does not prohibit exemption. The Legislature may exempt property of a certain class, or property used for a certain purpose. The Legislature has the power to select such objects of taxation as they may deem appropriate; but when any article of property is selected for taxation, it must be taxed in proportion to its value, and not specifically.

4. SAME. *Exemption. Unconstitutional acts.*

Any legislative act, whether a charter or other statute, the purpose of which is to exempt "the property of corporations for pecuniary profits," and to put it in a condition where it will not be subject to taxation, is in conflict with sects. 13 and 20 of art. 12 of the Constitution of this State, and, of course, confers no immunity against subsequent legislation. CHALMERS, J., dissented.

APPEAL from the Chancery Court of Copiah County.

Hon. E. G. PEYTON, Chancellor.

The appellant was incorporated by the Legislature on the 13th of April, 1871, with the name of "The Mississippi

Mills," and for the purpose of manufacturing cotton and woollen fabrics, and all kinds of machinery. The incorporators at once organized, and the corporation proceeded to operate in accordance with the provisions of its charter. On the 1st of April, 1872, the following act of the Legislature was approved : —

"An act to encourage the introduction of machinery and the establishment of factories in the State of Mississippi.

" Sect. 1. *Be it enacted by the Legislature of the State of Mississippi*, That in consideration of the construction of factories, and the introduction of machinery for the purposes of erecting, furnishing, and carrying on factories in this State, for the manufacture of cotton and woollen goods, or yarns, or fabrics composed of those or any other materials, and for the making of all kinds of machinery and implements of husbandry necessary for the cultivation of the soil, and to manufacture all other articles or things, of whatsoever character or description, not inconsistent with the laws and Constitution of this State or of the United States, and of the great benefit which the State will receive in the development of its manufacturing resources by means of said factories, and the large and increased amounts of machinery and capital that will, by this liberal-spirited policy, be invited to the State, thus giving employment to and supplying the wants of thousands of our people, and also the increased value which will thereby be added to the property of the State, thus enabling the State to greatly increase its revenue without additional and burdensome taxation on the people, the State hereby agrees with any and all manufacturing companies in this State, whose capital stock shall not be less than ten thousand dollars paid in, not in operation before the passage of this act, that all taxes to which said company or companies shall be subject for the period of ten years are hereby appropriated and set apart, and shall be applied to the payment of the debts and liabilities which any of said companies may have incurred in the construction of factories, or the purchase of machinery, or paying debts incurred by any of said companies in constructing or purchasing the same ; and it shall be the duty of the tax-collectors in every county, in each and every year, for the period of ten years, to give to each of said companies a receipt in full for the amount of all said taxes due, upon receiving from each of said companies an affidavit, made by the president or treasurer of each of said com-

panies, that the amount of said taxes have actually, and in good faith, been paid and applied by each of said companies during the year, in payment of debts incurred, or money borrowed, as aforesaid; and which receipt, so given, shall be in full of all taxes, county, State, or municipal, to which said companies shall be subject; *Provided*, That whenever the profits of any of said companies shall enable it to declare and pay to its stockholders an annual dividend of four per cent upon its capital stock, over and above the payment of its debts and liabilities, then the appropriation of the taxes aforesaid shall cease towards such company or companies declaring said dividends, and said taxes shall be paid by such companies declaring such dividends, to the tax-collector, to be by him paid over as required by law; *Provided further*, That nothing in this act contained shall be so construed as to exempt the property of any manufacturing or mechanical company from any tax levied by any county, city, or town, to meet the principal or interest on bonds issued by any such county, city, or town, to aid in the construction of railroads; and taxes thus levied and collected shall be applied to the payment of such bonds, and interest thereon.

"Sect. 2. *Be it further enacted*, That this act shall take effect and be in force from and after its passage."

The Mississippi Mills Company, having been "in operation before the passage of this act" of 1872, did not claim the benefit of its provisions. But, in 1873, all its buildings and machinery were destroyed by fire, and then the Legislature passed an act, which was approved on the 17th of April, 1873, as follows: —

"An act to amend the provisions of an act entitled 'An act to encourage the introduction of machinery and the establishment of factories in the State of Mississippi.'

"Sect. 1. *Be it enacted by the Legislature of the State of Mississippi*, That the provisions of an act entitled 'An act to encourage the introduction of machinery and the establishment of factories in the State of Mississippi,' approved April 1, 1872, be, and they are hereby extended to the Mississippi Mills, in the county of Copiah, and that the provisions and benefits of this provision shall be a part of the charter of said company, and shall apply to each and every manufacturing department of the same; *Provided*, That the presi-

dent, or some officer of said company, shall make the oath required by said act, and in all things comply with the provisions of said act.

"Sect. 2. *Be it further enacted,* That this act take effect and be in force from and after its passage."

In 1877, the following legislative act was passed and approved : —

"An act to amend an act entitled ' An act to encourage the introduction of machinery and the establishment of factories in the State of Mississippi,' approved April 1, 1872, and to amend all acts extending the provisions thereof.

"Sect. 1. *Be it enacted by the Legislature of the State of Mississippi,* That an act entitled ' An act to encourage the introduction of machinery and the establishment of factories in the State of Mississippi,' approved April 1, 1872, and all acts amendatory thereof, or acts extending the provisions thereof, be and the same is here so amended as not to exempt from taxation, State, county, or municipal, any property of any manufactory or manufacturing company, other than the paid-in capital stock of said companies, their machinery for manufacturing purposes, their manufactured goods, and the buildings in which their machinery is located, and the ground upon which buildings are situated, or which may be within the necessary inclosure around such buildings ; nor shall any tax to which any manufacturing company is or shall be subject on account of any other than the aforesaid description of property be appropriated or set apart for the benefit of said companies, or any of them ; *Provided,* That all the property herein exempted shall become taxable and shall be assessed as other property, and the taxes thereon collected as on other property, whenever such property shall be used for any other than manufacturing purposes.

"Sect. 2. *Be it further enacted,* That the tax-collectors of the several counties in which such manufacturing companies are situate, or may own property, shall, before giving to any such company any receipt for taxes, as provided in the said act of April 1, 1872, to which this [is] amendatory, collect from such company or manufacturer claiming the benefit of said acts, or either of them, an amount equal to the commissions of the assessor for assessing, and of the collector for collecting the tax on the property named in such tax-receipt.

" Sect. 3. *Be it further enacted,* That such tax-collectors shall pay over to the county treasurer of their counties the amount of the assessor's commissions so collected, and shall retain the tax-collector's commissions so collected by him, as if the tax had been collected as other taxes are, and paid into the State and county treasuries.

" Sect. 4. *Be it further enacted,* That before any corporation or company shall receive the benefit of this act, the president or directors of such company or corporation shall take and subscribe an oath that the profits on the capital invested by such company or corporation, for manufacturing purposes, has not exceeded four per cent per annum.

" Sect. 5. *Be it further enacted,* That this act take effect and be in force from and after its passage."

On the 4th of January, 1878, the Mississippi Mills Company filed a bill in chancery against W. W. Cook, tax-collector of Copiah County, alleging that the acts of 1872 and 1873 constituted a contract with the complainant, and that the act of 1877, which the tax-collector threatened to execute by a sale of complainant's property, impaired the obligation of such contract, and was in violation of the Constitution of the United States. The prayer of the bill was, that the tax-collector and his successors be restrained, by injunction, from collecting the commissions or taxes allowed by the act of 1877, and that they be compelled to execute the acts of 1872 and 1873. A temporary injunction was granted. The defendant filed a general demurrer to the bill. The chancellor sustained the demurrer, and the complainant appealed to this court.

*Harris & George,* for the appellant.

1. The power or capacity to make contracts generally, embracing the power to bind the State to forbear the exercise of particular powers, is an attribute of sovereignty, and is one of the great mass of powers belonging to the Legislature; and by the Constitution of the United States these contracts are inviolable. 16 How. ( U. S. ) 369, 416. The Legislature may favor particular enterprises or branches of industry by express exemption of the property employed in them from

taxation, or by merely omitting it from the scheme of taxation. The power to make this discrimination as to the subjects of taxation is an essential element of the taxing power, and enters into every intelligent system of revenue. Hence, sect. 20, art. 12, of the State Constitution has been held not to restrict the Legislature in the exercise of the power to select the subjects of taxation from the mass of taxable property, or to exempt from taxation property employed in particular enterprises of public importance. This section requires taxation according to value, and excludes specific taxes, but does not require that all property shall be taxed in every revenue scheme. The exemption of property or money employed in manufactures of a particular kind is common. See Laws N. Y. and Me., 5 Greenl. 133 ; 4 Cow. 556.

2. Sect. 13, art. 12, of the State Constitution, which forbids discrimination for or against corporations for profit, puts all property on the same footing, whether owned by individuals or corporations, and sect. 20, following, declares the rule as to all property ; and these leave the Legislature with power to grant, by contract, for an adequate consideration, exemptions of property employed in a particular way, whether owned by individuals or corporations. The absence of any provision prohibiting such grants, or of any provision securing the right to repeal charters, leaving the Legislature free to reserve or not, in such grants, the power to repeal or revoke them, would seem to forbid that we should attach to the thirteenth section a consequence so important as that of disabling the Legislature to make contracts respecting the taxing power. We find no provision directly prohibiting the Legislature from making exemptions irrepealable. So important a limitation, if intended, would have been expressed in plain, unambiguous terms.

The Constitution of Iowa has in it the thirteenth section, art. 12, of our Constitution, but it has also a general provision reserving the right to repeal charters and every grant of privilege. The Constitution of Alabama declares that charters

shall be alterable at the will of the Legislature. It also contains a provision similar to our thirteenth section of art. 12. It is plain that no irrepealable charters could be granted in these States, because the capacity to make binding contracts in charters of incorporation is taken away. The court in Alabama, and certain judges in Iowa, have held that this section was designed to prevent *invidious* exemptions of the property of corporations, even by an ordinary revenue law. In Alabama, the law condemned was one which made a discrimination of ninety per cent in favor of the stock of a purely moneyed corporation. In Iowa, it was held that the law discriminated against individuals, by allowing a municipal corporation to tax them while it exempted the property of corporations. An exemption for a fair equivalent is not invidious. In the Iowa and Alabama laws there was no equivalent at all. The laws were, in their nature and under the Constitution, subject to repeal. These decisions afford no warrant for giving to the thirteenth section of art. 12, standing alone in our Constitution, the effect of all the provisions of the two Constitutions to which we have referred. In this case we find no invidious exemption. It is a legislative proposition to every body, for no one is denied the right to unite in the scheme sought to be fostered.

3. When a contract is made by the State, by charter or otherwise, by proposal offered and accepted, the courts deem the consideration adequate, when the offer or charter has been accepted, because the parties have been led to invest money or labor, or both, under the proposal. This is the distinction between a grant in a charter under which organization takes place, and a grant after the corporation is fully established, an exemption in the latter being regarded as a gratuity. *Home of the Friendless* v. *Rouse,* 8 Wall. 438.

4. The act of 1872 is not a charter granted. It is, in its terms, an agreement by the State, — a proposal to persons generally. It is addressed to companies " not in operation " at the time of the passage of the act. The term " companies " can-

not be held to restrict the proposal to incorporated companies ; but, if so intended, it opens the way to all persons to form such companies. The purpose of the act was, not to favor corporations, as such, but to promote manufactories in Mississippi, independent of the character of the owners. This act was repealable, — that is, the State was not bound to keep this proposal always before the country, and might, at any time, withdraw it ; but as to those, whether incorporated companies or not, who had accepted the proposal, there was a vested right under the contract.

*W. P. Harris,* of counsel for the appellant, argued the case orally.

*T. C. Catchings,* Attorney-General, for the appellee.

1. Under sect. 20, art. 12, of our State Constitution, taxation must be equal, uniform, and *ad valorem.* It does not require all property to be taxed. The Legislature may exempt property, either expressly or by not providing for its taxation. When exerted, however, the taxing power must be directed against all property alike, of the class selected for taxation. So, if property is exempted from taxation, all of that class must be exempted. Taxation must also be equal and *ad valorem;* hence what is known as a commutation-tax is prohibited, for such taxation would be neither equal nor *ad valorem.* *O'Kane* v. *Treat,* 25 Ill. 561 ; *Hunsaker* v. *Wright,* 30 Ill. 148 ; 11 Wis. 37 ; *Franklin Ins. Co.* v. *The State,* 5 W. Va. 349 ; 38 Ind. 7 ; *Zanesville* v. *Auditor,* 5 Ohio St. 592 ; *Exchange Bank* v. *Hines,* 3 Ohio St. 15.

The property of A. cannot be exempted, and at the same time that of B. and C., of the same class, be taxed, for that would be neither equal nor uniform taxation ; the property of A. cannot be taxed by one mode, and that of B. and C. by another, for that would not be equal taxation ; it is not admissible to donate to A. the taxes assessed against his property, and at the same time to compel the payment of those assessed against the property of B. and C., for that would be doing indirectly what cannot be done directly ; and A. could not be

released from taxation, in whole or in part, because of supposed benefits therefrom to accrue to the public; for taxation, to be equal and uniform, must be laid in the same mode and to the same extent upon every particle of property of the class or classes selected for taxation. As the practice of commuting taxes is prohibited, a law exempting property from taxation, whether because of supposed public benefits to accrue, or otherwise, would be without consideration, and repealable at pleasure. *Salt Co.* v. *East Saginaw*, 13 Wall. 376; *Columbia Mfg. Co.* v. *Vanderpool*, 4 Cow. 556. Therefore, it follows, even if there was no other constitutional provision than sect. 20, that the Legislature can only lay taxes *ad valorem*, and cannot part, either with or without a consideration, with its power to tax any and all property in the State, at pleasure. And there is no difference, in this respect, between corporations and individuals.

2. Sect. 13 of art. 12 of the State Constitution was not intended to confer the power to tax the property of corporations, for the Legislature already had that power; nor was it intended to protect corporations from invidious discriminations, for that protection was already afforded by sect. 20; and it was not intended to require that the property of corporations should at all times be taxed, for that would be to prohibit exemptions at all, inasmuch as it would not be allowed to tax the property of corporations, and at the same time to exempt similar property of individuals. It was designed to place the property of corporations for pecuniary profits upon the same footing as that of individuals. A law granting immunity from taxation is a mere act of bounty, and repealable at pleasure; but where the immunity is conferred by the act of incorporation, or an amendment thereto based upon a new consideration, the immunity rests upon a contract, and is a vested right. The distinction is obvious when we consider the difference in the sources of power from which the two kinds of exemption spring. The one comes from the power to regulate taxation; the other from the power to create corporations. The latter

pertains to sovereignty. This sovereign power, if unrestricted, might grant immunity from taxation, in a charter of incorporation ; and if the charter should be accepted and acted on, the grant would rest upon a contract, and be protected from legislative interference. Sect. 13 was designed to limit this power, so that the Legislature could not grant immunity from taxation. As to corporations not for pecuniary profits, there is no limitation.

Upon the whole, my conclusion is that there can be no irrevocable exemption of property, whether of individuals, or corporations for pecuniary profits ; that the property of both must forever remain subject to taxation, whenever the Legislature chooses to impose it ; that the taxation of both must be by an equal and uniform rate, and that all taxation must be laid according to value.

*L. O. Bridewell*, on the same side, filed a lengthy and elaborate brief, arguing the case fully, and citing upon the point as to the unconstitutionality of the acts of 1872 and 1873, and the effect of sects. 13 and 20 of art. 12 of the State Constitution, the following authorities: *Ohio Life Ins. Co.* v. *Debolt*, 16 How. 431 ; *Zanesville* v. *Richards*, 5 Ohio St. 243 ; *Hill* v. *Higdon*, 5 Ohio St. 589 ; *The People* v. *McCreery*, 34 Cal. 43 ; 5 Wall. 107 ; 28 Miss. 213.

*T. C. Catchings*, Attorney-General, and *L. O. Bridewell*, also argued the case orally.

The judges delivered opinions *seriatim*.

CAMPBELL, J. :

This case presents the question whether, under the Constitution of this State, adopted on the 1st December, 1869, it is within the power of the Legislature to grant to a corporation for pecuniary profit exemption from the taxation of its property, so as to free it from liability to be taxed during the time for which such immunity may have been granted.

The language of sect. 13, art. 12, of the Constitution is,

"The property of all corporations for pecuniary profits shall be subject to taxation the same as that of individuals ; " and that of sect. 20 of the same article is, "Taxation shall be equal and uniform throughout the State. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

It was not intended by sect. 13 to confer power on the Legislature to tax the property of corporations of the class mentioned. That existed, without this section, as an inherent legislative power.

It could not have been intended by this provision to require the taxation of the property of corporations whose charters, previously granted, secured them exemption from taxation ; for this was beyond the power of the framers of the Constitution, and of the people in adopting it, as repeatedly declared by the Supreme Court of the United States in reference to that clause of the Constitution of the United States which forbids any State from passing any law impairing the obligation of contracts.

It is not to be supposed that it was designed by this provision to fetter legislative discretion by an inflexible rule that the property of all corporations for pecuniary profit must always be taxed.

It cannot be said that this section intended to exempt from taxation the property of corporations other than those for pecuniary profit.

The language of sect. 13 is peculiar, and we have no other guide for its interpretation except its terms. No other provision of the Constitution sheds any light on this, whose meaning must be ascertained from the fair import of the words employed. There is no difficulty in determining the meaning of the words "the property of all corporations for pecuniary profits." In the language of grammar, that is the subject in the sentence, being that of which something is affirmed ; and that which is affirmed of it is, that it "shall be subject to taxation, the same as that of individuals." An analysis of this predicate will show an affirmation that its subject, viz., the property of all corporations for pecuniary profits, "shall be

subject to taxation," and of a certain kind, viz., "the same as that of individuals." It is not declared that the property of the corporations mentioned shall be "*subjected*," but "*shall be subject to taxation*," — that is, shall be liable to taxation. "The property of all corporations for pecuniary profits shall be subject to taxation;" but how? The answer is, "the same as that of individuals." The liability of the property of all corporations for pecuniary profit to taxation is thus secured by the fundamental law, and it is to be "the same as that of individuals." The language is not, shall be subject to the *same taxation*, but to "taxation the same as," etc. If the language as used is equivalent to "*the same taxation as that of individuals*," it must nevertheless be held that its object and effect were to fix the sort of taxation to which the property of all corporations should be subject, and not to affect the condition of being subject to taxation. The peculiar arrangement of the words, "the same as," suggests as possibly within the contemplation of the framers of the Constitution this view, viz.: the property of all corporations for pecuniary profit shall be subject to taxation, just as the property of individuals is. That of individuals is liable to taxation. They have not been granted immunity from taxation. Their property is subject to taxation, and so, in like manner, the property of all corporations for pecuniary profit shall be liable to taxation.

The import and purpose of sect. 13 seem to have been to establish the condition of the property of all corporations for pecuniary profit as being subject to taxation, and to forbid the exemption of such property from the liability to be taxed, by placing the property of all corporations for pecuniary profit, the same as that of individuals (natural persons), completely within the legislative power for the purpose of taxation, subject to the twentieth section of the same article of the Constitution; so that the Legislature may at all times impose taxes on the property of such corporations, just as it may on the property of individuals. The provision is *mandatory*, not that the property of corporations shall be taxed (that is left to the Legislature), but such property shall ever be subject — *i.e.,*

liable — to be taxed, if the Legislature so wills. Such property shall not be freed from liability to taxation, but shall always be liable to be taxed, just as the property of individuals is so liable. The "same as" are words of comparison. If such corporate property is placed beyond the reach of the taxing power, it is not subject to taxation. The Constitution says it shall be "subject to taxation, the same as that of individuals;" and the legislative act, whether it be a charter or other form of law, which says it shall be exempt, and not subject to taxation, is in conflict with the Constitution; and none will contend that a charter which contains provisions violative of the Constitution confers any right wherein the conflict is.

This section of our Constitution is copied from the Constitution of Iowa, where it has been held by a majority of the court that it is not constitutional for the Legislature to exempt the property of corporations from the same taxes imposed on the property of individuals, and that the property of corporations must be taxed when that of individuals is taxed. *City of Davenport* v. *Railroad Co.*, 38 Iowa, 635; *City of Dubuque* v. *Illinois Central R. Co.*, 39 Iowa, 56. In these cases, Cole, J., dissented, holding the view that the constitutional provision is permissive, and not mandatory.

The Constitution of Alabama of 1868 has a provision nearly like the thirteenth section of art. 12 of ours, and it has been interpreted by the Supreme Court of that State to prohibit the Legislature from discriminating, in a revenue law, in favor of corporate property, so as to free it from bearing the same taxation which is imposed on individual property. *Mobile* v. *Stonewall Ins. Co.*, 53 Ala. 570. In this case, it is said by the court that the provision was "added, in itself self-executing, without the aid, in fact in restraint, of legislative power, subjecting corporate property to the taxation imposed on individuals;" and it is announced in that opinion, that "If property of a particular kind is subjected to taxation, and owned by a corporation, it must bear the rate of taxation imposed on individuals."

The principle upon which the cases in Iowa and Alabama rest is, that the constitutional provision under consideration is mandatory to the Legislature, requiring it to impose upon the property of all corporations for pecuniary profit the same taxation as that imposed on the property of individuals; and, therefore, that it is unconstitutional for the Legislature, in adopting a revenue law, to withdraw property of such corporations from the operation of it, so as to relieve them in any way from the same taxation imposed on the property of individuals. If the Legislature cannot, by a general revenue law, discriminate in any degree in favor of property of corporations, forbidden because it is owned by them, how can it be claimed that it can, by a particular act of incorporation, secure in advance to the corporation absolute immunity from taxation of all kinds, beyond the reach of legislative recall or interference? If corporate property must be taxed the same as individual property, and the Legislature cannot omit to tax it when it taxes individual property; if the constitutional provision is self-executing, and *per se* subjects corporate property to the same taxation as individual property, as held by the courts of Iowa and Alabama, it is plain that the Legislature cannot thwart the constitutional requirement by the easy process of chartering corporations beyond the reach of the constitutional provision. If a corporation escapes taxation by virtue of a legislative act, it is not " *subject to taxation,*" whereas the Constitution says it shall be, and thus a legislative act of incorporation is made to annul the Constitution. It is said that corporate property must be taxed when individual property is; but how can that be, if corporate property is secure in immunity from taxation by virtue of a legislative grant?

The true view is that this provision of the Constitution fixes, beyond legislative act, the condition of the property of all corporations for pecuniary profit as being always liable to the exercise of the taxing power, so as to subject it, at the will of the Legislature, to the same taxation as the property of individuals may be subjected to. The Legislature may exempt

property of a certain class, whether the owners be corporations or natural persons, but corporate property shall never be placed beyond the reach of the taxing power. It may not be taxed, but it must be ever liable. It need not be " *subjected*," but it must always be " *subject*," to taxation, the same as that of individuals, for the Constitution so declares. The provision is *mandatory* as to universal liability to be taxed, but *permissive* to the Legislature to tax the property of such corporations, or exempt it, as it may see proper, in common with the property of individuals, which may be taxed, or not, for the time being.

Sect. 12, art. 12, of our Constitution prohibits the creation of corporations with certain privileges therein enumerated ; and then follows immediately sect. 13, which declares that ." the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals." It is thus suggested that the thought of the framers of the Constitution was, to forbid the creation of corporations with certain privileges, and, leaving the Legislature free from restriction as to the powers it should confer on corporations, except as inhibited by the twelfth section, by the thirteenth section to declare the liability to taxation, the same as that of individuals, of the property of all corporations for pecuniary profit. Sect. 14 of the same article prohibits the authorization of any county, city, or town to become a stockholder in any company, association, or corporation, except upon a condition prescribed in it.

It is thus seen that sect. 13 is in the midst of restrictions upon legislative power as to corporations, and its association strengthens the idea its terms import. *Noscitur a sociis.* Certain corporate privileges are absolutely forbidden by sect. 12. The liability of corporate bodies to taxation the same as that of individuals is fixed by sect. 13, and the restriction of sect. 14 completes the constitutional safeguards as to corporations. This section stands as a barrier to any legislative act whereby to make the property of corporations for pecu-

niary profit not " subject to taxation the same as that of individuals." It sprang from the experience that corporations were in the habit of asking and obtaining legislative exemption from liability to taxation, and it was intended to establish the inflexible rule of being " subject to the same taxation " that the property of individuals is, but leaving the Legislature free to tax the property of corporations or not, on the same principle on which it may or may not tax that of individuals.

The fact that our Constitution does not contain a provision against irrepealable charters argues nothing against the foregoing views. The Alabama court did not find in the provision of the Constitution of that State, like the thirteenth section of art. 12 of ours, the intention to reserve to the Legislature the power to subject corporate property to taxation at all times, because it said that purpose was accomplished by another section of their Constitution, and that this section was added to preclude the possibility of even a temporary exemption of corporate property from taxation. Undoubtedly, if under this section there could not be a temporary exemption, it would be absurd to say there could be a perpetual exemption by charter.

The first clause of sect. 20 establishes the rule of equality and uniformity throughout the State in taxation, and the other requires that all property shall be taxed in proportion to its value, to be ascertained as directed by law. This fixes the principle by which property shall be taxed, and leaves the Legislature free to tax other things than property, as it may deem to be best, subject only to the rule of equality and uniformity as declared by the first part of the section. The words " all property shall be taxed in proportion to its value " do not require that *all* property shall be taxed, and deny to the Legislature the right to exempt any. The purpose of their employment is to fix the rule for the taxation of property. Before the adoption of the present Constitution, the power and the practice existed to tax property without regard to value. The

intent of this provision was to protect against the taxation of property except in proportion to its value, to be ascertained as directed by law. The *ad valorem* rule in taxing property is secured, and the ascertainment of this value, as directed by law, is made necessary, so that the proportion to its value may be borne in the matter of taxation of property. If the purpose had been to prohibit exemptions from taxation, it would have been declared in unmistakable terms. It was easy to declare that the Legislature shall not exempt any property from taxation. The omission of such a provision makes it certain that no such prohibition was thought of.

The Constitution of Missouri contained the provision that " all property subject to taxation in this State shall be taxed in proportion to its value ;" and in *The State* v. *North et al.*, 27 Mo. 464, the judge delivering the opinion of the court said this provision " has been repeatedly construed by this court to mean, not that all the property in the State must be taxed, but that when any article of property is selected for taxation, it shall be taxed in proportion to its value, and not specifically." This view had been distinctly announced in *Hamilton et al.* v. *St. Louis County Court*, 15 Mo. 3. It is true that there seems to be a different view announced in a very singular opinion of the majority of the court, in *Crow et al.* v. *The State*, 14 Mo. 237 ; but the opinion of Napton, J., in that case, is convincing in favor of the opposite view, and which, as seen subsequently, became firmly established in that State. He says : " I understand this provision of our Constitution to be simply designed as an injunction upon the Legislature to lay *ad valorem* taxes upon such property as may be selected for taxation. It does not prohibit exemption or discrimination ; it does not deny to the Legislature the right to select such objects of taxation as they may deem most appropriate. * * * The Legislature cannot make a law declaring that my horse, which is worth fifty dollars, shall pay the same tax with my neighbor's, which is worth one hundred. This would be a specific tax upon horses, without reference to their value. But they may decline

to tax, or exempt from taxation, all horses under a certain age, or all horses of a particular breed."

The Constitution of California contained these words, viz.: "All property in this State shall be taxed in proportion to its value."

In *The People* v. *Coleman*, 4 Cal. 46, it was held, in a well-reasoned opinion, "that the Legislature may select or exempt such property as in its discretion it may think proper," for taxation. This ruling was followed in *High* v. *Shoemaker*, 22 Cal. 363. It is true that these cases were, as to this, over-ruled in *The People* v. *McCreery*, 34 Cal. 432, and that subsequent cases have followed the last-named case; but we consider the view held in the earlier cases named the sounder one, and certainly as that with which, if any, the framers of our Constitution were acquainted, because the case of *The People* v. *McCreery* was finally decided at the January term, 1868, of the Supreme Court of California, and was subsequently published in the volume of cases, and it is highly improbable that a knowledge of the new doctrine of the California court had become generally diffused. If, therefore, in borrowing this provision from the Constitution of California, it is to be held that we took it with the settled judicial construction placed upon it, the inference is a just one that the makers of the Constitution had in view the construction adopted in *The People* v. *Coleman* and *High* v. *Shoemaker*, *ut supra*, and which had been published for years, and acquiesced in by the courts and people of California until the time of the case in 34 Cal.

The Constitution of Arkansas required laws to be passed taxing all real and personal property, enumerating certain things not to be taxed, and providing that "the General Assembly may exempt from taxation personal property to the value of five hundred dollars to each tax-payer." Of course, under this it was held that the Legislature could not exempt other property than that embraced in the power to exempt. *Expressio unius, exclusio alterius*. *Fletcher* v. *Oliver*, 25 Ark. 289. And on examining the Constitutions of those States

whose courts deny the right of the Legislature to exempt any thing from taxation, it will be found that this view results from an unmistakable requirement by the Constitution that every thing shall be taxed, except as to the court of California, of which we have already spoken.

It follows from these views, that it was competent for the Legislature to modify or repeal the act of April 1, 1872, and that the act of February 1, 1877 (Sess. Acts, 72), is constitutional, and that the bill of complaint is not maintainable.

Decree affirmed.

SIMRALL, C. J.:

The primary and general question for discussion and decision is the meaning and effect of the thirteenth and twentieth sections of the twelfth article of the Constitution. What is the meaning and for what purposes were the thirteenth and twentieth sections of the twelfth article of the Constitution adopted?

The taxing power pertains to the State as a sovereignty. It vests in the Legislature, to which, in general terms, is committed the legislative power. See sect. 1 of art. 4. These sections were not in the Constitutions of 1817 nor 1832, yet the authority of the Legislature under these Constitutions to tax was plenary.

The sections not being necessary to confer power, must have been devised to regulate, control, or limit the power.

The twentieth section prescribes a plan, or rule, in accordance with which all laws imposing taxes must be framed. If the burden is imposed on property, the tax shall be in proportion to the value, and a scheme must be devised by which the value shall be ascertained. That idea is distinctly conveyed by the words, "according to its value, to be ascertained as directed by law." The entire clause reads, "All property shall be taxed in proportion to its value, to be ascertained as directed by law."

The *ad valorem* principle is the rule applicable to property.

What does the other clause of the section mean? — " Taxation shall be equal and uniform throughout the State." Certainly it intends that the *rate* shall be the same in every county and locality. There shall be no discrimination in one part of the State against another.

If the tax be on cattle or horses, that species of property must be taxed in all parts of the State, and the rate must be the *same* everywhere.

The injunction to the Legislature is, that when it undertakes to tax property, and has selected the subjects on which the burden shall be imposed, it must be laid on a valuation, and not on the acreage, for instance, and the *per centum* of the tax must be the same in all localities, and must be uniform; that is, all persons, owners of the same sort of property, must bear equally the burden.

The section does not necessarily require that all property in the State at the time of the assessment must be taxed. It does not take away from the Legislature the discretion to select the subjects. But when the selection is made, all property of that sort must bear its proportional part of the burden.

I turn now to the thirteenth section, and will treat it in the same method as the twentieth section. A close analysis of the language discovers a distinction between the different kinds of corporations. The Convention excluded altogether those corporate bodies purely eleemosynary, whose chief object is to dispense benefits to the public, rather than make profit for their founders,— such as asylums for the sick, aged, or orphans; institutions of learning, and to promote Christianity, etc.

The purpose of the exclusion was, not to negative the power to tax them, but to leave them as they were before, and as they would have been without this section. In the legislative history of the State, such corporations never had been taxed. It seemed to have been the settled policy that they should not be. The Convention left these charitable and eleemosynary bodies corporate in possession of their traditional immunity. It simply declined to make any rule respecting them.

The omission (purposely) of these bodies from the section gives force to the view already advanced, that there is nothing in the twentieth section, nor elsewhere in the Constitution, imperative on the Legislature to tax all property and exempt none.   For it is manifest that these corporations were left out of the thirteenth section so that they might continue to enjoy the legislative exemption or pretermission from taxation. The idea embodied is, that whilst the property of corporations for profit shall be subject to taxation, there is a distinction between them and those bodies associated under charters to teach the Christian religion, to promote education, or provide asylums for the sick and destitute ; these institutions are founded to dispense benefits to society, and not to those who establish them.

Pursuing further the analysis of the language, it will be observed that the sentence is constructed in the imperative mood, — *shall be subject to taxation.*

The words are mandatory, and are *perpetually* addressed to the Legislature, the department of government charged with the duty and the power to tax.   The command is, " Do nothing, refrain from any act or law, by which the property of bodies-politic, for profit, shall be loosed or acquitted from *continuous* subjectibility to taxation."

The next thing to be noticed is the import of the word " subject " — " subject to ; "   not that the taxes must be laid in all circumstances, and at all times ; not, indeed, that they must be imposed at all, but that the property of those bodies shall be *subject* to taxation, as the Legislature in its wisdom and discretion shall order.

The complete text is, " The property of all corporations for pecuniary profits shall be subject to taxation, the same as that of individuals."

" *The same as that of individuals,*" as prescribed in the twentieth section, on the plan of " equality," " uniformity," and " valuation."   The corporation shall pay no more, no less, than individuals.   There shall be no discrimination or in-

vidious distinction. If that were the whole import of the section, it would be utterly meaningless and useless. It would have no distinctive value or purpose, and might just as well have been left out of the Constitution. To come to that conclusion, we must impute folly to the Convention.

As already remarked, it did not require a grant of power to tax corporate property; and neither this section nor the twentieth were inserted in the instrument on any such idea, or for any such purpose.

Under the twentieth section, the Legislature is obliged, if it taxes the property of corporations for profit, to tax the *same* as it *taxes individual* property. If it did *not*, the law would infract the rules of '' equality,'' '' uniformity,'' and '' *ad valorem* '' there prescribed.

If the Legislature conformed to those rules (which to it are the supreme law), it is impossible that the corporate property could be taxed higher, or in any other way, than similar individual property. The Legislature is prohibited to enact an unjust, unequal, and discriminating law.

We must find some other motive for the thirteenth section than to accomplish something already secured by another section. That purpose is, the very important mandate that the property of corporations for gain shall *be subject* to taxation like that of individuals. It is mandatory in this: that nothing shall be done, or can be done, which shall withdraw it from perpetual liability to taxation.

If the thirteenth section is obeyed, the Legislature cannot, in any form of statute, take from the corporate property its liability to taxation. It cannot, by an act of incorporation, in view of the prospective benefits of the enterprise of the corporation, bind a future Legislature so that it may not judge of the fitness and propriety of requiring the corporate property to share in part the public burden. If the exemption is granted in the form of a contract in the charter, that is prohibited.

This section was first adopted in this State in 1869; it is

of modern origin in any of the American Constitutions. It is plainly the lesson of history, — as much so as any of the great principles taken from *Magna Charta*. It grew out of the enormous aggregations of capital associated under common control to make gain for the proprietors, which have had in modern years such stupendous development in the railroad, mining, banking, manufacturing, and navigation corporations ; and the habit of the Legislature of this and other States, to stipulate an exemption from taxation perpetually, or for a limited time, or until a certain profit was made. The exemption was granted on the consideration that these great enterprises would aid to develop the industries of the State and increase its population. We had in this State no history, nor elsewhere, of the exemption of individuals, and no mischief, real or supposed, growing out of such exemption. There was, however, much experience, here and elsewhere, of the exemption of corporations such as I have named.

The thirteenth section contains no idea of hostility or repression towards corporations for profit. It gives no hint of a policy of discouragement. It contains no rebuke of legislation which pretermits from taxation the corporate property of an association struggling into existence. If the Legislature should determine that it was wise and for the general good to pretermit the taxation of all property employed in the manufacture of cotton and woollen cloths, or agricultural implements, or household furniture, as a means to encourage investments in these enterprises, there is nothing in the thirteenth section, or combined with the twentieth, which would prevent it. The exemption would be on account of the nature of the property and the use to which it is put. The exemption of a church edifice, of a college, or a hospital, is because of the use to which the property is put. In these instances the property is of a mixed nature, both realty and personalty. So, if the Legislature, from a motive to promote domestic industries, choose to exempt — that is, refrain from taxing — cotton or woollen factories, or plow or furniture facto-

ries, whether owned by joint-stock companies, corporate bodies, or individuals, it could do so. In such cases, in selecting the subjects of taxation, it passes by those sorts of property, or property put to a particular use. But distinction in the selection of the subjects cannot be made because the property belongs to a corporation or individuals, nor because the owners are poor or wealthy. If the exemption is because of the use, as in manufacturing, it must extend to the like property of individuals.

The struggle was long and arduous before the Supreme Court of the United States announced that a State, by an act of incorporation, could cede away for a time, or perpetually, the power to tax corporate property. A minority of the judges, as often as the question was presented, denied that such a grant in the charter was protected by the Federal Constitution, on the ground that the State could not, in that form of contract, denude itself of one of its sovereign powers, so necessary for its self-preservation.

The State courts have never cheerfully yielded their assent to this doctrine. The time, perhaps, will come, when the Supreme Court of the United States will recede from it. The necessity of the preservation of the taxing power in its integrity had, perhaps, much to do in the adoption of the thirteenth section. It is wiser and safer, when we consider that the State lives on, after successive generations have passed away, to leave to each Legislature, in time to come, to judge for itself upon what persons and things taxes shall be laid, rather than that a Legislature of to-day may declare that certain property, belonging to certain owners, and future accumulations to it, shall for a long term of years, or forever, be exempt from such impositions.

The Constitution commits that entire subject to each Legislature, when it comes to act on the subject, with the single restriction that, if taxes are imposed on manufacturing property (for illustration) owned by individuals, the like tax shall be paid by corporations; but if the Legislature, from

considerations of policy, exempts property because of its use and the purpose for which it is employed, the exemption cannot be given to the corporation as owner, whilst the individual owner is required to pay the tax. That would not be equal or uniform.

There is no limitation on the power of the Legislature to incorporate railroad, manufacturing, or other like corporations, and the grant of all the franchises usual and necessary to the complete and orderly performance and conduct of the several businesses and enterprises, except that the Legislature cannot grant them an immunity from taxation. The Legislature is prohibited by the Constitution from making that contract with the corporations.

It is hardly necessary to say that these views do not apply to such charter exemptions granted before the present Constitution went into effect, if such exemption was irrevocable or irrepealable when granted.

I have read the cases cited from Iowa, California, and Alabama, and do not entirely agree, in the reasoning, with any one of them; nor are these cases harmonious with each other.

The courts of the States having similar constitutional provisions do not seem to have given full and exhaustive deliberation to the subject; and, perhaps, have not reached a conclusion which will be accepted as a finality.

In the contrariety of views which they have expressed, I do not attach any more weight to their decisions than the reasoning is intrinsically worth. The subject is so new that it presents itself in this court as "*res integra*," and it ought to receive such solution as is approved by the reason and judgment of the members of the court.

CHALMERS, J., dissenting.

As a citizen, I regard the construction placed by my associates on the Constitution as most fortunate for the interests of the State; as a judge, I cannot see that it is warranted by the language of the instrument. It is the settled doc-

trine of the Supreme Court of the United States that a State legislature, if not prohibited by the local constitution, may contract away the taxing power of the State in consideration of public benefits to be derived from a particular enterprise ; and that the law by which such a result is accomplished becomes, when passed, irrepealable, except by the consent of the persons in interest.

However erroneous I may regard such a doctrine, I am bound by my oath of office to observe and enforce it, until that court which is upon these questions the supreme judicial arbiter shall recede from their own decisions.

The inherent power, then, exists in the Legislature of this State, by charter or contract to exempt in perpetuity, or for a term of years, the property of individuals or of corporations, unless there is something in our Constitution to inhibit such contracts ; and the contract or charter, when made and accepted, is irrepealable.    The right to contract away the taxing power of the State exists, unless expressly prohibited.

Let us look for the prohibition.

Two clauses of the Constitution only have any possible bearing on the question, to wit, the thirteenth and twentieth sections of art. 12.

" Sect. 13. The property of all corporations for pecuniary profits shall be subject to taxation, the same as that of individuals."

" Sect. 20. Taxation shall be equal and uniform throughout the State.    All property shall be taxed in proportion to its value, to be ascertained as directed by law."

Sect. 13 plainly prescribes the same rule of taxation with regard to corporate property that is applicable or may be applied to the property of individuals.    It prohibits any discrimination between the two classes of property.    It declares that the property of corporations shall be liable or subject to taxation, the same as that of individuals. It thereby compels as against such property a rule as rigor-

ous, and prohibits in favor of such property a rule more rigorous, than that which is or may be applied to individual property. It is therefore both mandatory and inhibitory, — mandatory in the requirement that the rule of taxation shall be as onerous, inhibitory in the declaration that it shall not be more so. If it stood alone, if there was not elsewhere in the instrument some limitation upon legislative power with regard to the taxation of individual property, this section would have no other force or effect than that of establishing a uniform rule between the two classes of property, and that rule would be wholly determinable by the legislative will, except that it could not vary when applied to the different classes. In all other respects it would be left wholly to legislative wisdom.

Turning to the twentieth section, however, we find certain rules prescribed for the imposition of all taxes; and here, therefore, we discover those limitations upon the taxation of the property of individuals which the thirteenth section declares shall be applicable alike to the property of corporations for pecuniary profits.

The thirteenth section, therefore, is to be read in connection with the twentieth, and can have no complete and perfect interpretation until the meaning of the twentieth section is ascertained.

Whatever rate or rule of taxation may be adopted under the one, may be adopted under the other. Whatever exemption may be granted under the one, may be granted under the other. Whatever contract may be made with reference to individual property under the twentieth section, may be made in reference to corporate property under the thirteenth. Similarity of taxation necessarily implies similarity of exemption.

We all concur in holding that the twentieth section does not require the taxation of all the property in the State, but only that all that is taxed shall be taxed uniformly, equally, and according to value. These are the three rules, and the only rules, laid down with reference to taxing the property of

individuals.    What do they mean?    The requirement of uni-
formity means that all property belonging to the same class
shall be taxed alike; so that all horses shall be taxed at the
same rate, and all lands, or stocks, or merchandise.    There is
to be no discrimination between property of the same class;
and it shall not be competent to levy one rate upon country
lands and another upon city lands, or one rate upon horses of
one breed and another upon horses of a different breed.

If the uniformity requirement stood alone, it would be com-
petent to affix different rates to different kinds of property,
and so to impose one rate on all lands, and another on all
horses, and still another on all stocks, and still another on all
merchandise.    But this kind of discrimination is prohibited
by the requirement of equality, by which it is made obliga-
tory that the same rate shall be imposed on every kind and
species of property that is subjected to taxation.    This is the
practical construction which has, by successive Legislatures,
been placed on these words, and I think it the true one.    The
clause requiring *ad valorem* taxation needs no explanation.

It is quite manifest that there is nothing in these require-
ments of uniformity and equality, and of *ad valorem* taxation,
which in the slightest degree militates against that inherent
right to contract away the taxing power which the Supreme
Court of the United States declares to reside in every State
legislature, unless restricted by the organic law.

If a proposition so plain needed to be strengthened, its cor-
rectness is placed beyond controversy by the fact that clauses
substantially similar to our twentieth section are found in the
Constitutions of perhaps a third of the States of the Union;
but in none of them has it been held that their effect was to
forbid such contracts or charters.    My colleagues concede
this.    They admit that there is nothing in the Constitution to
prohibit an irrepealable exemption, by contract, of the property
of individuals.    They admit that under the settled doctrine
of the Supreme Court of the United States we would be com-
pelled to uphold such a contract, if made with reference to the

property of an individual. They confess their inability to discover any prohibition of such power of exemption in sect. 20. It follows, therefore, that said section contains an implied recognition of legislative power to make such contracts.

With this admitted and conceded interpretation of sect. 20, let us write out the two sections in full, giving sect. 13 literally, and giving sect. 20 as we have now ascertained its true meaning to be : —

" Sect. 13. The property of all corporations for pecuniary profits shall be subject to taxation, the same as that of individuals."

" Sect. 20. Taxation shall be equal and uniform throughout the State. All property *that is taxed* shall be taxed in proportion to its value, to be ascertained as directed by law. *The Legislature may, by contract,* in consideration of public benefits, *exempt property from taxation, and such exemptions shall be irrepealable during the terms for which they are granted.*"

This rendering of sect. 20 must be admitted to be legitimate, since this meaning to its language is conceded to be the one which, under the decisions of the Supreme Court of the United States, we are bound to adopt.

How it is possible, with the two sections thus written, to deduce from sect. 13 a prohibition of chartered exemptions as to corporate property, I am wholly unable to perceive. Conceding that the exemption is permissible under the one section, I am at a loss to see how it is inhibited by the other.

I find no such magic as my colleagues in the words, " *shall be subject to taxation,* the same as that of individuals." To me they have no meaning, other than that which would be conveyed by the equivalent phrases, " shall be viewed in the matter of taxation ; " or, " shall be treated ; " or, " shall be dealt with," " the same as that of individuals ; " or, " shall be liable to taxation, the same as that of individuals." These, and many similar phrases which might perhaps be suggested, all convey but one and the same idea, *namely,*

that the law-giver, in the imposition of taxes, shall know no difference between the property of individuals and that of corporations for pecuniary profits. Alike they shall be taxed equally, uniformly, and *ad valorem;* alike they may be omitted from the tax-lists for the current year; alike they may be made the subject of a contract of exemption, which, when made, shall be irrepealable. It is said that the injunction is, that the property of corporations "shall be subject to taxation;" that this means that it shall ever be kept subject, and hence it can never be so dealt with that it will not be subject. If the sentence simply was, that "the property of all corporations for pecuniary profits shall be subject to taxation," it is possible that it might bear this construction, though it would be a most lame and inadequate method of expressing the idea. But the injunction is not that it shall be subject, or shall be kept subject, to taxation, but that it shall be subject "the same as that of individuals." Hence it follows that whatever may be done with reference to individual property may be done with reference to it.

There is no violation of the Constitution until some law has been enacted in regard to it which would be invalid if applied to individual property. It cannot be taxed otherwise than uniformly and equally and *ad valorem,* because the property of individuals cannot be so taxed. It may be the subject of an irrepealable contract of exemption, because the property of individuals may be.

It "shall be subject to taxation the same as that of individuals." How is that of individuals subject? In subordination to the legislative right to exempt by contract. So, therefore, corporate property must be subject, also, in subordination to the right of exemption by contract or charter. The constitutional injunction that the subjectibility shall be the same is violated whenever a different rule is applied, either to the imposition of, or the exemption from, taxation, because the rule of similarity tolerates no distinction as to either.

It is said that the framers of the Constitution desired to pro-

hibit the perpetual exemption of corporate property, because that was a great evil of which they had practical knowledge; but they did not care to extend the prohibition to the property of individuals, because such exemptions, either in perpetuity or for a term of years, were unknown in American legislation. This might have afforded an excellent argument, in the Constitutional Convention, for making the distinction between the two sorts of property, but is worthless as showing that, in point of fact, such distinction was made.

But is it not remarkable that if the makers of the Constitution had an idea so wise, so well defined, so beneficent, they could find no appropriate words in which to express it? Since the case of *Knoop* v. *Bank of Ohio*, 16 How. 376, there has been a persistent struggle, both in the State and Federal courts, over this claim that one Legislature could, by contract or charter, so cede away the power of taxation as to fetter the hands of their successors. Many of the ablest jurists on the Federal bench, and a majority, perhaps, of the State courts, have questioned or denied it. If this was the idea which the framers of our Constitution wished to set at rest, how easy would it have been to have declared in a single line that all charters should be repealable, or that there should be no chartered exemption from taxation of corporate property. It seems scarcely respectful to the givers of the organic law to suppose that, with ideas so well defined, they should have couched them in language which can only be understood by the most labored construction.

But they seem to have been men who had no difficulty, ordinarily, in expressing their meaning. Our Constitution abounds with short, nervous, pithy sentences, which leave no doubt in the mind of the reader what it is that they intend to forbid or to sanction.

The thirteenth section of our Constitution is borrowed from that of Iowa, and has been twice considered by the Supreme Court of that State. The exact question here presented was not

involved, but in the several opinions delivered there is no hint that the section was intended to prohibit contract exemptions from taxation. The section is found also, somewhat broadened, in the Constitution of Alabama; and in the single deliverance which has been made upon it in that State, there is a distinct declaration that it was not intended to accomplish such a result. *City of Davenport* v. *Railroad Co.*, 38 Iowa, 633; *City of Dubuque* v. *Illinois Central R. Co.*, 39 Iowa, 56; *City of Mobile* v. *Stonewall Ins. Co.*, 53 Ala. 570.

Both the Constitution of Iowa and that of Alabama, in addition to this section making the property of corporations for pecuniary profits subject to taxation the same as that of individuals, contain, also, clauses declaring all charters repealable.

The framers of our Constitution adopted the section with reference to the subjectibility to taxation of corporate property, and omitted the one making charters repealable. This, it seems to me, settles the question, and demonstrates that while they desired unmistakably to place individual and corporate property on the same footing as to taxation, they did not propose in any manner to interfere with that inherent legislative right to contract away the taxing power which the Supreme Court of the United States had for years before the making of our Constitution repeatedly declared to exist, except where denied by the organic law.