## YAZOO & M. V. R. Co. *v.* BOARD OF LEVEE COM'RS.

*(Circuit Court, S. D. Mississippi.* November 12, 1888.)

1. CONSTITUTIONAL LAW—OBLIGATION OF CONTRACT—TAXATION—EXEMPTION.
   Const. Miss. art. 12, §§ 13, 20, which provide that the property of all corporations for pecuniary profits shall be subject to taxation the same as the property of individuals, and that taxation shall be equal and uniform, apply to corporations wholly private, and do not prevent the grant of an exemption to a corporation of a *quasi* public character, which shall be irrepealable.

2. SAME.
   The preamble of an act of the legislature creating a corporation declared the construction of a railroad through a certain part of the state to be a work of great public importance, and recited that the difficulties of construction had been such that no private company had been enabled to establish it.   The act then created the corporation for the construction of the road, and "to make certain in advance of such investment, and as an inducement therefor, the taxes and burdens which" the state would impose thereon, granted an exemption from all taxes for a certain term of years.   *Held,* that the exemption was irrepealable.

3. SAME—POLICE POWER—LEVEE TAXES.
   The charter having exempted the road from all taxation by cities and towns, a levee tax, assessed by a levee district under authority of the legislature, is void, as violating the obligation of the contract.   The levee tax is not an exercise of the police power of the state.

4. TAXATION—EXEMPTION—COMMENCEMENT OF PERIOD.
   The charter providing that the company "shall be exempt from taxation for a term of twenty years from the completion of said road to the Mississippi river, but not to extend beyond twenty-five years from the date of the approval of this act," the exemption does not begin until the road is completed to the river.

In Equity.   Bill for injunction.

Bill for injunction by the Yazoo & Mississippi Valley Railroad Company against the board of levee commissioners, to restrain the collection of certain taxes on plaintiff's property.

*W. P. & J. B. Harris,* for complainant.

*Mr. Calhoun, Mr. Green,* and *The Attorney General,* for defendants.

HILL, J.   The questions now to be decided arise upon defendant's demurrer to complainant's bill.   The bill, in substance, alleges that the

complainant corporation was created by an act of the legislature of the state of Mississippi, approved February 17, 1882. The preamble to said act, as explanatory of its purpose, and section 8 of the act, relied upon for the relief prayed for in the bill, are as follows:

"Whereas, the construction of railroads to, in, through, and along the Mississippi river basin, and the Yazoo and Sunflower river basins, penetrating these and other alluvial lands in this state west of the Chicago, St. Louis, and New Orleans Railroad, and connecting them by railroads and branches with other railroads, west, east, north, and south, is deemed and hereby declared to be a work of great public importance, and, in strict accordance with the true policy and interest of this state, should be encouraged by legislative sanction and liberality; and whereas, the physical difficulties of constructing and maintaining railroads to, across, along, or within either the Mississippi, Sunflower, Deer Creek, or Yazoo bottoms or basins, or the other alluvial lands herein referred to, are such that no private company has so far been able to establish a railroad and branches developing said basins and alluvial lands, and connecting them with the railroad system of the country."

"Sec. 8. Be it further enacted that, in order to encourage the investment of capital in the works which said company is hereby authorized to construct and maintain, and to make certain in advance of such investment, and as an inducement and consideration therefor, the taxes and burdens which this state will and will not impose thereon, it is hereby declared that said company, its stock, its railroads and appurtenances, and all its property in this state necessary or incident to the full exercise of all the powers herein granted, not to include compresses and oil-mills, shall be exempt from taxation for a term of twenty years from the completion of said railroad to the Mississippi river, but not to extend beyond 25 years from the date of the approval of this act; and, when the period of exemption herein prescribed shall have expired, the property of said railroad may be taxed at the same rate as other property in this state. All of said taxes to which the property of said company may be subject in this state, whether for county or state, shall be collected by the treasurer of this state, and paid into the state treasury, to be dealt with as the legislature may direct; but said company shall be exempt from taxation by cities and towns."

The bill further alleges that by an act of the legislature of this state, approved February 28, 1884, that the board of levee commissioners for the Yazoo and Mississippi delta was incorporated, which act, among other things, by the fourteenth section provides as follows:

"That, for the purpose of building and maintaining the levees, the property of all railroad companies and other corporations, of every kind, real and personal, within the levee district, shall be taxed like that of individuals, any exemption in the charter of such railroad companies notwithstanding; and said *ad valorem* tax of 13 mills and 9 mills is hereby levied and assessed on all property of such railroad companies, and the tax collectors of the counties, respectively, shall collect and pay said tax to the levee board."

—with other provisions, not necessary to be stated in this opinion. The bill further alleges that an act was passed by the legislature of this state, approved April 3, 1888, which provides that—

"Every railroad that has failed to pay taxes for any year, not being exempt by law or its charter from taxation, shall be assessed and pay *ad valorem* tax as hereinafter provided, unless within sixty days after the passage of this act it shall pay all taxes for which it is liable according to its charter, or the privilege tax for which it was liable as follows: A standard or broad gauge road,

for the years prior to 1884, $80 per mile; for 1884, $100 per mile, and for 1886 and 1887, $125 per mile."

The bill further avers that the tax collectors within the levee district have proceeded to assess the taxes on complainant's railroad, in pursuance to the provisions of said act, for the years 1885, 1886, and 1887, and will enforce payment thereof unless restrained by this court. The bill avers that by the provisions of section 8 of the act of 1882 said railroad and all the property connected with it is exempt from this taxation, and will be for 20 years from the completion of said road to the Mississippi river, not, however, to exceed 25 years from the passage of said act.

The defendants interpose their demurrer to the allegations and prayer of the bill, and assign as causes of demurrer the following: (1) There is no ground alleged giving this court jurisdiction of the matters charged. (2) This court has no jurisdiction of the matters charged. (3) There is no equity on the face of the bill. (4) Complainants charter, as set forth in the bill, does not exempt from levee taxes, and, if it did, the contingency upon which the exemption is based has not occurred; that is, the completion of the railroad to the Mississippi river. (5) That if said charter on its face does exempt from levee taxes, it could not contract away the powers of subsequent legislatures to impose such taxes, which they have done, as shown by the bill. Such power would be in conflict with sections 13 and 20 of article 12 of the constitution of the state of Mississippi.[1] (6) That said sections of the constitution of this state were construed by the supreme court of the state before the complainant's charter was granted and accepted, and became a part of it. (7) That no question arises in this case upon the inviolability of contracts under the constitution of the United States, which has reference to valid contracts, not void contracts. (8) That the tax imposed is a local tax, made under the police power of the legislature.

The first question presented by the demurrer is as to the jurisdiction of this court to maintain this cause, both parties being citizens of the state, as shown by the bill. The solution of this question depends upon whether or not the exemption from taxation provided in the charter is a contract, within the meaning of the tenth section, article 1, of the constitution of the United States, which prohibits any state from passing any law impairing the obligations of contracts. If it is, then it is clear that the act of February 28, 1887, imposing the tax to raise money for the purpose of building and maintaining levees, is repugnant to this provision of the constitution of the United States; and that, if the exemption claimed by the bill is and was in force when the taxes sought to be enjoined were assessed and threatened to be enforced, such proceeding is in contravention of this clause of section 10 of article 1 of the constitution of the United States. The act of the legislature granting the exemp-

---

[1] Which sections are as follows:

"Sec. 13. The property of all corporations for pecuniary profits shall be subject to taxation, the same as that of individuals."

"Sec. 20. Taxation shall be equal and uniform throughout the state. All property shall be taxed in proportion to its value, to be ascertained as directed by law."

tion must have been a valid act under the constitution and laws of the state, as this provision was not intended to protect illegal or void contracts.

That the legislature may pass laws exempting property from taxation for a limited time was decided by the supreme court of this state in the case of *Mississippi Mills* v. *Cook*, 56 Miss. 40; and by all the judges, that the thirteenth and twentieth sections of the twelfth article of the constitution of this state leaves it discretionary with the legislature to impose taxation on property belonging to corporations for pecuniary profits, or not. A majority of the court held that the exemption given by one legislature might be repealed by another, and the property subject to taxation at the will of the legislature. Judge CHALMERS, in a dissenting opinion, held otherwise, and that the legislature might grant an exemption from taxation, which formed a contract irrepealable by the legislature, which all the judges agreed might be done but for the thirteenth and twentieth sections of article 12 of the constitution of the state. The corporation in the case of *Mississippi Mills* v. *Cook* was a manufacturing corporation, in which the public had no special interest, and was created solely for the pecuniary profit of stockholders of the corporation. I am of opinion that a fair construction of these two sections of the constitution makes their provisions applicable to corporations in which the public has no special interest, such as banks, manufacturing companies, and other corporations, created solely for the profit of its stockholders or owners, and not to those of a *quasi* public character, necessary as arteries of commerce and the public convenience, the development of the resources of the state, and the enhancement of the value of the property of others, and consequently a proportionate relief from the burden of taxation of all the tax-payers of this state. Railroads are common carriers, and declared to be public highways, are made post roads, and owe various duties to the public not imposed on other corporations. For this conclusion, I must admit, I have no adjudicated authority upon which to rely, and only give it as my own conclusion, and as a reason for not feeling bound by the decision of the majority of the court in the case of *Mississippi Mills* v. *Cook;* otherwise I would feel bound by that construction given the constitution of the state. If I am correct in making this distinction between the corporations embraced in these sections of the constitution and those of a *quasi* public character, then, from the preamble and the provisions of the act incorporating the complainant corporation, there is no difficulty in determining that it belongs to the *quasi* public class; there is no difficulty in determining the understanding and purpose of the incorporators on the one side and the legislature, representing the sovereignty of the state, on the other. There was a large scope of country of the richest lands in the state that lay inaccessible to the markets and the balance of the world, and, with few exceptions, left as an unoccupied wilderness. To give to the owners of these lands an outlet to the world, and a market for the immense crops of cotton and other products of these rich lands, and for the immense forests of timber growing on them and necessary to be taken off the land to reduce it to cultivation, and to enhance the value of the lands, to in-

crease every species of property to be used in their development, thereby diminishing the burdens of taxation on the property of other tax-payers of the state in proportion to the increased taxes to be derived from the anticipated increase of the property to be realized from the improvements, as well as to create these new arteries of commerce and transportation for person and property, and to convert these rich lands, then a wilderness, into the most productive fields, settled up by a numerous and thrifty population, and the other benefits the public were expected to derive from the facilities these new railroads would afford. It could not be expected that these new railroads would earn much, if anything, by way of a return to those who would invest their money in the enterprise until the expected development of these new sources of wealth and commerce should be realized; hence this exemption from taxation was provided as an inducement for the investment. I therefore conclude that the exemption provided is a contract irrpealable under the constitution of the United States referred to.

It is insisted upon the part of the defendants that the eighth section of the charter does not embrace levee taxes, and, if it did mention them, that the levy of such taxes is an exercise of the police power of the state, which the legislature cannot contract away. I am unable to draw a distinction between a tax to build and maintain a levee and a tax levied by a town or city for the purpose of building bridges, or making other improvements for the benefit of the inhabitants of the town or city. And it is admitted by counsel for the defendants that the clause prohibiting towns and cities from imposing taxation on the company, its railroad, and other property connected with it, is a valid exemption. The charter provides an exemption from all taxation.

The most difficult point to be determined is as to the period of time at which the exemption commences, whether at the passage of the act or only from the time of the completion of the railroad or one of its branches to the Mississippi river. The act provides that the 20-years exemption shall extend for 20 years from the completion of the railroad to the Mississippi river, but not to extend beyond 25 years from the date of the approval of this act, after which time the property of the said railroad might be taxed at the same rate as other property in this state. It will be observed that the eighth section of the act under which the exemption is given fixes no point on the Mississippi river. The second section of the act provides that one of the lines, or a branch therefrom, shall reach the Mississippi river at or near a point opposite Arkansas City, if practicable, but this provision relates only to the practicability of reaching the Mississippi river at or nearly opposite Arkansas City. The completion of the railroad to any point on this river will entitle the complainant corporation to the exemption provided, but it must be completed to some point on this river to entitle it to the 20-years exemption. When that is done, the exemption will extend to all the railroads, and property connected with it, used in their construction and operation under the charter, including its stock. It is argued by the learned counsel for the complainant, with great earnestness and plausibility, that the

provision in the act that, after the exemption expires, the property may be taxed at the same rate imposed on other property in the state, is the exclusion of any taxation until that time, and that the exemption commenced with the approval of the act, not to extend beyond 25 years, and not longer than 20 years from the completion of the railroad to the Mississippi river.    The only decision of the supreme court of the United States on this point to which I have been referred is the case of *Railroad Co. v. Denvis,* 116 U. S. 665, 6 Sup. Ct. Rep. 625.    In that case the exemption was for 10 years after the completion of the railroad within the state.    Five of the judges held that the exemption commenced only from the completion of the road, while four of them held that it commenced from the passage of the act of incorporation.    While this division in opinion would certainly very much weaken the force of a decision, if merely persuasive upon this court, yet, it being the judgment of the supreme court, it would not be safe to depart from it by a court bound by its decisions, as is this court.    The learned counsel for the complainant argue that this case is not applicable to the case under consideration, and to sustain this position endeavor in this case to draw a distinction between the words "for ten years after" the completion of the road, and "twenty years from" the completion of the road.    Though the distinction asked to be drawn is plausible, I am unable to adopt it.    Had the language been "until twenty years after the road shall be completed to the Mississippi river, but not to continue more. than twenty-five years after the approval of this act," there would have been no doubt about the exemption beginning with the approval of the act.    It was doubtless understood, both by the legislature and the incorporators, that the road would be built to the Mississippi river as soon as practicable, and, if it was so built, that during its construction it and the property connected with it would have been exempt from taxation under the provision of section 608, Code 1880, which applies to all railroads during their construction. So I conclude that the exemption under the charter will not commence until the completion of the road to the Mississippi river, but that any portion of it not completed and not operated for profit is exempt under the provisions of the Code of 1880.    It is pressed in argument by complainant's counsel that, if this be held to apply to this road, that it deprives it of the exemption granted other railroad companies by the same legislature, which gave 20 years' exemption from the passage of the acts chartering them.    The answer to this argument is that it was not so provided in the charter, and that the failure to obtain the exemption provided for has arisen from the failure of the complainant to comply with its part of the contract in building the road to the Mississippi river, and hereby securing to the state and the public to be benefited the benefits constituting the consideration for the exemption.    If the purpose is still to carry out the enterprise as was contemplated when the charter was granted, the exemption can be obtained in a reasonably short time by continuing the road to the Mississippi river, which, during its construction, will be exempt from taxation under the provisions of the Code. But the exemption provided in the charter did extend the exemption

for all the time necessary in the construction of the railroad or roads over and above that given the other roads or companies, as the exemption provided for them included the time of construction. This being a case that can be appealed to the supreme court, and being one that concerns the public, will be given an early hearing, when this decision can be reviewed. I deem it best for all parties to sustain the demurrer, and dismiss the case, so that an appeal can be taken at once.