**MOSCOW HARDWARE CO., Limited, v. COLSON et al.**

(Circuit Court, D. Idaho, N. D. December 19, 1907.)

GARNISHMENT—PERSONS SUBJECT TO GARNISHMENT—PUBLIC CORPORATIONS.

"The Regents of the University of Idaho," created a corporation by the laws of the territory and the Constitution of the state, is a public corporation and an agency of the state, and as such is not subject to garnishment in the absence of a statute clearly evincing the purpose of the Legislature to subject public corporations to such process; and the general provision that any "person" may be garnished is not sufficient for that purpose, although the word "person" is expressly defined by the statutes as including a corporation; such provisions being generally construed as restricted to private or business corporations.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 6, pp. 5323–5335; vol. 8, pp. 7752–7753.]

At Law. On motion to dissolve attachment.

Geo. G. Pickett and J. C. Orland, for plaintiff.
Forney & Moore, for defendants.

DIETRICH, District Judge. "The Regents of the University of Idaho," a corporation, appears specially and moves to quash the notice of garnishment served upon it. The motion is resisted by the plaintiff. The sole question is whether or not the moving corporation is subject to garnishment, process issued and served pursuant to the laws of the state of Idaho.

The University of Idaho was established by an act of the Legislature of the territory of Idaho in 1889 (Laws 1889, p. 17). The gov-

ernment of the university was vested in a Board of Regents, which is specifically provided for in the act. By section 3 it is provided that:

"The Board of Regents and their successors in office shall constitute a body corporate by the name of 'The Regents of the University of Idaho,' and shall possess all the powers necessary or convenient to accomplish the objects and perform the duties prescribed by law," etc.

When the territory was admitted as a state, certain public lands were donated for the support of the university. By section 10 of article 9 of the Constitution of Idaho it was provided that:

"All the rights, immunities, franchises and endowments heretofore granted thereto by the territory of Idaho are hereby perpetuated unto the said university. The Regents shall have the general supervision of the university and the control and direction of all the funds of, and appropriations to, the university, under such regulations as may be prescribed by law."

My attention has been called by plaintiff to State ex rel. Robinson v. Carr, Auditor, 111 Ind. 335, 12 N. E. 318, and Sterling v. Regents of the University of Michigan, 110 Mich 369, 68 N. W. 253, 34 L. R. A. 150, in support of the contention that "the Regents of the University of Idaho" is not a "municipal" corporation; and it may be conceded that the first case mentioned is fairly in support of this view. Other courts have adopted a contrary view. See note to State ex rel. Little v. Regents, 29 L. R. A. 378. But it seems to me to be wholly unimportant to discuss the precise technical meaning of the phrase "municipal corporation," or to determine whether the Regents of the University of Idaho are, strictly speaking, a municipal corporation or a public corporation, or under just what head it should be classed. Its origin, maintenance, and purpose are all so distinctively public that, so far as the question under consideration is concerned, it is clear that the rules relating to municipal corporations and quasi municipal corporations should upon principle be made to apply to this corporation. It is distinctively and exclusively a public educational institution, brought into existence and maintained solely for the purpose of performing certain administrative functions of the state. The prevailing, although not universal, rule, is that, in the absence of a statute clearly expressing the intention of the Legislature to the contrary, the state, its officers, and its agencies, such as counties, school districts, municipal corporations strictly speaking, and other public bodies created for the purpose of performing administrative functions of government, are not subject to garnishment process. The rule is based upon considerations of public policy. The general rule is so familiar and the reasons supporting it have been so frequently and so generally stated, not only in the decisions originating in the jurisdictions where it prevails, but in the text-books, that no useful purpose would be subserved in restating them. See Buchanan v. Alexander, 4 How. 20, 11 L. Ed. 857; Providence v. Virginia (C. C.) 11 Fed. 284; Pringle v. Guild, 118 Fed. 655; Keene v. Smith, 44 Or. 525, 75 Pac. 1065; Skelly v. School District, 103 Cal. 652, 37 Pac. 643; State ex rel. Summerfield v. Tyler, 14 Wash. 495, 45 Pac. 31, 37 L. R. A. 207, 53 Am. St. Rep. 878; Divine v. Harvie, 7 T. B. Mon. (Ky.) 439, 18 Am. Dec. 194; 14 Am. & Eng. Enc. of Law (2d Ed.) 811, 812; 20 Cyc. 988.

It is undoubtedly true that every state has the right to subject all persons to garnishment process and to include in the term "persons" public as well as private corporations; but, by reason of the injury which the courts have generally held would accrue to public interests by permitting the state and its agencies to be garnished, the intention of the Legislature to confer such right of garnishment upon a creditor will not be inferred from general language, but the intention of the Legislature must clearly appear. This is a rule of statutory construction prevailing not only with regard to attachment statutes, but to all statutes which would operate to encroach upon what are commonly referred to as "sovereign rights," or interfere with the orderly performance of public functions by those agencies established for the administration of government. In Savings Bank v. United States, 19 Wall. 239, 22 L. Ed. 80, the court said:

"The most general words that can be devised [for example, any person or persons, bodies politic or corporate] affect not him [the king] in the least if they tend to restrain or diminish any of his rights or interests. * * * The rule thus settled respecting the British Crown is equally applicable to this government, and it has been applied frequently in the different states and practically in the federal courts."

By section 915, Rev. St. U. S. [U. S. Comp. St. 1901, p. 684], the state attachment laws are made applicable to common-law causes in the Circuit Courts of the United States. By subdivision 5 of section 4307 of the Revised Statutes of Idaho of 1887, it is provided that debts and credits, etc., not capable of manual delivery, must be attached by leaving with the "person" owing such debts a copy of the writ of attachment and a notice that the debt owing by such person is attached, in pursuance of the writ. In section 4309 it is further provided that "all persons" having in their possession or under their control any credits or other personal property belonging to the defendant at the time of the service of garnishment process shall, under certain conditions, be liable to the plaintiff for the amount of such credits, etc. There is not anywhere in the statutes any specific reference to the state or its officers, or to any of its administrative agencies, or to municipal or public corporations; and hence the question is whether the word "person" as used in these and other statutory provisions relating to garnishment process was intended by the Legislature to include legal entities of a public character. There is no question that the word "person," as used in the statutes, is not limited to a natural person; for, by section 16, Rev. St. 1887, it is expressly made to include "a corporation as well as a natural person."

No case from the Idaho Supreme Court construing these statutes has been called to my attention. The statutes are, however, in all essential particulars identical with those of California, both relating to the subject of garnishment and the definition of the word "person." Indeed, the Idaho statutes may be said to have been adopted from California. In Skelly v. School District, 103 Cal. 652, 37 Pac. 643, the Supreme Court of California held that a school district was not subject to garnishment, notwithstanding the comprehensive language of the statutes. The reasons for the rule are very clearly and force-

fully stated. In Wallace v. Lawyer, 54 Ind. 506, 23 Am. Rep. 661, the court says:

"And the decisions are generally made upon statutes authorizing corporations in terms to be garnished; yet the courts hold that the general word 'corporation' must be restricted to mean private or ordinary business corporations, and not extended to embrace municipal corporations or bodies politic and corporate. The words used in the statute of this state are 'persons' or 'corporations' in general terms."

The only case called to my attention by counsel for the plaintiff is that of Waterbury v. Board of Commissioners, 10 Mont. 515, 26 Pac. 1002, 24 Am. St. Rep. 67, where the conclusion is reached that a board of county commissioners in the state of Montana could be garnished. The court there expressed dissatisfaction with the reasons usually given in support of the prevailing rule of public policy, and it may be that it intended to reject in its entirety that view; but it is to be observed that the statutes of Montana provide that "the word 'person,' may extend and be applied to bodies politic and corporate," and this language, different from that contained in the California and Idaho Codes, was regarded by the court as clearly indicating an intention of the Legislature to subject public corporations to garnishment. The court says:

"But the statute of Montana, as above noticed, goes further than to use the words 'persons' or 'corporation' in general terms as in Indiana, and the remarks of the judge in that case and the authorities to which he refers lose their force in this court. * * *"

The question is what the Idaho Legislature intended by the general language employed in the statutes above referred to. It being the generally accepted doctrine that it is against public policy to permit public officers in their official capacity, or municipal or other public corporations, to be subjected to the annoyance and peril of garnishment process, I cannot avoid the conclusion that, if the Legislature intended to depart from this general rule, it would have employed language indicative of such purpose. Two striking illustrations in support of this view are found in the statutes. The rule of statutory construction which, in the case of garnishments, denies the application of general language to the state and its agencies, is likewise applicable to statutes limiting the time in which actions may be commenced; and also statutes creating what are usually referred to as mechanics' liens. Under title 2 of part 1 of the Code of Civil Procedure of the Revised Statutes of Idaho, the periods for commencing actions of various kinds are specified. The language used is of the most general and comprehensive character; and yet the Legislature apparently did not deem it sufficient to make the statutes applicable to the state; for by section 4061 it is expressly provided that:

"The limitations prescribed in this title apply to actions brought in the name of the state or for the benefit of the state in the same manner as to actions by private parties."

Again, by section 3335 of the Idaho Code of Civil Procedure (annotated), it is provided that "every person" performing labor upon any "building" has a lien upon the same, etc. The language is most

comprehensive and seemingly embraces all buildings of whatsoever character and by whomsoever owned. Yet in the following section—that is, section 3336—it is expressly provided that any person who performs labor upon any "building" for any county, city, town, or school district has a lien thereon.

In view of the prevailing doctrine of public policy, and in the absence of a statute clearly evincing the intention of the Legislature to subject public corporations to garnishment process, or an authoritative construction by the Supreme Court of the state of the general language of the statute, I do not think that I can properly recognize the validity of the attempted garnishment in this case; and the motion will therefore be allowed.