IN RE DELINQUENT REAL ESTATE TAXES, POLK COUNTY. STATE OF MINNESOTA, APPELLANT.[1]

January 30, 1931.

No. 28,298.

[1]Reported in 234 N. W. 691.

*Henry N. Benson,* Attorney General, and *W. K. Montague* and *H. M. Feroe,* Assistant Attorneys General, for the state.

*James E. Montague,* County Attorney, and *W. E. Rowe,* for Polk county.

STONE, J.

In this statutory proceeding for the collection of delinquent real estate taxes, the county of Polk seeks to have 30 tracts of farm land acquired by the state of Minnesota through the foreclosure of mortgages taken by the rural credits bureau adjudged liable for unpaid taxes (with penalties, interest, and costs) assessed by the local officials. Judgment went against the state, and it appeals.

The rural credits bureau, which we shall call from now on the "bureau," is an agency of the state established under an act of the legislature by express authority of the state constitution. The latter is found in the amendment of art. 9, § 10, authorizing the state to establish and maintain a system of rural credits and to use its credit for that purpose. Pursuant to that authority, the legislature enacted L. 1923, p. 246, c. 225 (G. S. 1923 [1 Mason, 1927] § 6030, et seq.) under which the bureau was immediately organized and has since functioned.

Title of the involved lands has been acquired by the state through foreclosure of mortgages taken in its name by the bureau or by deeds taken from mortgagors or their assigns in lieu of foreclosure. Such lands are leased if possible, pending and subject to sale, and so made the source of some revenue. "The policy of the bureau," and of the law of its organization, is to sell foreclosed lands as speedily as possible "and to rent the farms until they are sold."

The "primary purpose is to place these lands on the market and to get them into the hands of bona fide purchasers." The bureau has a sales agency, which has disposed of something like a million and a quarter dollars worth of foreclosed farms, notwithstanding

the very unfavorable conditions prevailing since its organization.

Originally art. 9, § 10, of the state constitution prohibited the use of the state's credit for private purposes, but by the amendment of 1922 (submitted to the people under L. 1921, p. 999, c. 528) there was added this proviso:

"Provided, however, that for the purpose of developing the agricultural resources of the state, the state may establish and maintain a system of rural credits and thereby loan money and extend credit to the people of the state upon real estate security in such manner and upon such terms and conditions as may be prescribed by law, * * * and the purposes for which the credit of the state * * * may be given or loaned as herein provided are declared to be public purposes."

Art. 9, § 1, dealing generally with the power of taxation, declares that along with public burying grounds, public schoolhouses, public hospitals, academies, colleges, universities, all seminaries of learning, all churches, church property and houses of worship, institutions of purely public charity, "public property used exclusively for any public purpose shall be exempt from taxation."

As already indicated, L. 1923, p. 246, c. 225, under the constitutional amendment authorizing its creation, is the charter of the bureau. Section 19 is this:

"All mortgages, real estate and other property owned and held by said Bureau in its business of loaning and all certificates or bonds issued by said Bureau in the transaction of the business shall be free from all general taxes, state, county, and municipal, and shall not be subject to State Income Tax. Such mortgage[s] shall be exempt from any registration tax."

■ We address ourselves first to the premise upon which the argument for the county has proceeded and upon which the judgment necessarily rests. It is that, in the absence of express exemption by constitution or effective statute, these lands, although held in fee simple by the state itself, would be taxable. That premise is impossible. Taxation is the means whereby the state procures the

revenue for its support. It must come from extraneous sources—subjects of the state and their property rather than the state itself. A state, no more than an individual, can extract from itself the money for its own support. There is nothing in sovereign power which enables the possessor to lift itself clear of the necessity for the constant and assured financial support of its subjects. So it is in opposition to and frustration, pro tanto, of the one purpose of taxation for the state to tax its own property, whatever its use at the time being.

Hence, while legally competent for a state, in the absence of constitutional obstacle, to put some tax burden on its own property, it is presumed, nothing more appearing, that no legislature intends to do so. "Therefore such property, even when not exempted from taxation by constitutional or statutory provisions, is so exempted by necessary implication." 37 Cyc. 872. The authorities are summarized to the same effect at 26 R. C. L. 331, and 2 Cooley, Taxation (4 ed.) 1313.

As to property of a state, in distinction from that of a municipal corporation, the cases are in accord. In Foster v. City of Duluth, 120 Minn. 484, 486, 140 N. W. 129, 48 L.R.A.(N.S.) 707, it was said that "the undisputed rule" is as above stated. The determinative factor was not so much the use of the property at the time being as its "public character." That character is derived from its ownership and is not lost because of a temporary use, which standing alone might be considered of a private nature. It follows that, independently of the legislative prohibition (L. 1923, p. 246, c. 225, § 19, G. S. 1923 [1 Mason, 1927] § 6048) and simply because of the absence of any law imposing it, the lands in question are not now subject·to any form of tax.

We have considered but need not discuss the claim of the county that the state owns the land in a proprietary as distinguished from its sovereign capacity. If we were dealing with the property of one municipal corporation within the territory of another (as was the case in City of Providence v. Hall, 49 R. I. 230, 142 A. 156) the argument might have to be gone into. It need not be because

here the ownership is that of the state itself. For the same reason we do not stop to consider what, if any, difference there may be between "public purposes" and "governmental purposes."

The argument for the county ignores an essential and inherent difference in respect to taxation between public property and private property. Public property, by reason alone of its ownership, is immune from taxation in the absence of any expression of sovereign will otherwise. Private property, on the other hand, because of its ownership alone is subject to taxation in the absence of law to the contrary. So it is not accurate to speak of public property as exempt, for it is, by nature, immune. Only private property, from which the tax burden has been lifted by express law and which otherwise would be subject to taxation as other private property, can be accurately considered the subject of exemption. It is by reason of express law that such property is exempt. Public property, on the other hand, remains immune from taxation in the absence of express and effective law declaring otherwise. This distinction is made in Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129, 48 L.R.A.(N.S.) 707, and must control every understanding consideration of the difference between public property and private property in respect to their freedom from or subjection to ordinary taxation.

We reiterate the conclusion (reached in Sanborn v. City of Minneapolis, 35 Minn. 314, 318, 29 N. W. 126, and followed in Foster v. City of Duluth, 120 Minn. 484, 140 N. W. 129) that until there is effective law to the contrary "the rights or interests of the state in land are not subject to the provisions of the laws for the assessment and collection of taxes." The courts cannot in tax proceedings acquire jurisdiction over the titles, rights, or interests of the state. Without its effective consent, "the state cannot be subjected to the jurisdiction of the courts, nor be compelled to defend in them."

We have gone far enough to develop compelling reasons for reversing the judgment on the merits. Pressed below and presented here is the proposition, for the state, that the constitutional exemp-

tion (art. 9, § 1) from taxation of "public property used exclusively for any public purpose" bars any attempt to tax lands gotten by the state through the bureau. The issue has been fully argued, but neither the great public interests affected nor the urgent need of many counties for relief justify us in advancing a dictum that would at best be merely an advisory opinion without any sanction of authority for it.

Judgment reversed.

