(No. 5906. June 3, 1933.)

CITY OF IDAHO FALLS, a Municipal Corporation, Respondent, v. EMMITT PFOST, Commissioner of Law Enforcement of the State of Idaho, and FRED J. BABCOCK, Attorney General of the State of Idaho, Appellants.

[23 Pac. (2d) 245.]

Fred J. Babcock, former Attorney General, Sidman I. Barber, former Assistant Attorney General, Bert H. Miller, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Appellants.

Ralph L. Albaugh for Respondent.

GIVENS, J.—Respondent instituted this action to restrain appellants from enforcing secs. 61–2201 to 61–2211, I. C. A., against the municipality, on two grounds: that the act does not apply, and was not intended by the legislature to apply to municipal corporations, and that such application, if so intended, and as attempted, violates secs. 2 and 4, art. 7, of the Constitution; thus this action does not involve the constitutionality of the statute, merely as to the second point, the constitutionality of its application.

Section 61–2201, I. C. A.,[1] imposes a tax of one-half mill per kilowatt hour on the production within the state of electricity for barter, sale or exchange.

The state contends that the proper rule of construction to be applied in determining whether the act applies to respondent is that generally applied to exemptions: namely, strict construction against allowing an exemption, or the

[1] "In addition to the licenses and taxes now provided by law, each and every individual, firm, partnership, common-law trust, corporation, association or other organization, now engaged or hereafter to engage in the generation, manufacture or production of electricity and electrical energy in the State of Idaho, either through water power or by any other means for barter, sale or exchange, and hereinafter referred to as the 'producer,' shall on or before the fifteenth day of each calendar month, beginning with the fifteenth day of July, 1931, render a statement to the commissioner of law enforcement of the State of Idaho of all electricity and electrical energy generated, manufactured or produced by him or it in the State of Idaho, during the preceding calendar month and therewith pay a license tax of one-half mill per kilowatt hour on all such electricity and electrical energy

converse, application to all not expressly exempted from the scope of the enactment.[2]

On the other hand, respondent contends that the statute is to be viewed from the angle that taxation of a municipal corporation or its functions or activities is the exception; hence, unless the statute by its terms and necessary implications, clearly applies, there exists not an exemption, but failure to include; i. e., taxation is the exception, freedom from taxation the rule.[3]

Checking the above authorities, though we have by no means exhausted all available, shows that the strict rule against exemption or exception, has not been universally, or even generally followed in determining whether a statute in the absence of express declaration shall be held to impose a tax on proprietary functions or property of a municipal corporation.

*Salisbury v. Lane*, 7 Ida. 370, 63 Pac. 383; *Kootenai County v. Seven-Seven Co.*, 32 Ida. 301, 182 Pac. 529, and

---

so generated, manufactured or produced, measured at the place of production as shown on such statement in the manner and within the time hereinafter provided."

[2] 61 C. J., p. 393; *City of Portland v. Kozer*, 108 Or. 375, 217 Pac. 833; *People v. Deep Rock Oil Corp.*, 243 Ill. 388, 175 N. E. 572; *Sanitary Dist. of Chicago v. Gibbons*, 293 Ill. 519, 127 N. E. 691; *People v. City of St. Louis*, 291 Ill. 600, 126 N. E. 529; *City of Providence v. Hall*, 49 R. I. 230, 142 Atl. 156.

[3] *In re Droll*, 108 Neb. 85, 187 N. W. 876, 26 A. L. R. 543; *Mayor and Aldermen of Jersey City v. Blum*, 101 N. J. L. 93, 127 Atl. 214; *Henson v. Monday*, 143 Tenn. 418, 224 S. W. 1043; *Webster v. Board of Regents*, 163 Cal. 705, 126 Pac. 974; *State Land Settlement Board v. Henderson*, 197 Cal. 470, 241 Pac. 560; *City of Los Angeles v. Board of Supervisors*, 108 Cal. App. 655, 292 Pac. 539; *City of Pasadena v. Los Angeles County*, 182 Cal. 171, 187 Pac. 418; *Penick v. Foster*, 129 Ga. 217, 58 S. E. 773, 12 Ann. Cas. 346, 12 L. R. A., N. S., 1159; *Eagle Point Irr. Dist. v. Cowden*, 137 Or. 121, 1 Pac. (2d) 605; *City of Portland v. Multnomah County*, 135 Or. 469, 296 Pac. 48; *City of Portland v. Welch*, 126 Or. 293, 269 Pac. 868; *State v. Hamblen County*, (Tenn.) 34 S. W. (2d) 715; *Inhabitants of Whiting v. Inhabitants of Lubec*, 121 Me. 121, 115 Atl. 896, 897; Cooley, Taxation, 4th ed., secs. 621–644; note 3 A. L. R., p. 1440.

*Bistline v. Bassett,* 47 Ida. 66, 272 Pac. 696, 62 A. L. R. 323, did not involve municipal corporations, and we note in *City of Louisville v. Cromwell,* 233 Ky. 828, 27 S. W. (2d) 377, 378, this:

"The general rule applicable to asserted rights of exemption from taxation is that the language of the instrument conferring the exemption must be strictly construed, since the right is a carved out one for the benefit of the claimant and which is not enjoyed by the inhabitants generally, and it is therefore a species of conferred special privilege which must be clearly stated and set forth before it will be given. 26 R. C. L. 313, sec. 274, and Cooley on Taxation (4th ed.), vol. 2, p. 1403, sec. 672. All other writers and courts when dealing with the subject apply the general rule as so stated, but Mr. Cooley, on page 1414, sec. 673, of his same work, says that, while some jurisdictions apply such strict construction rule to exemptions of municipal property, 'the better rule is that strict construction of exemptions statutes apply to exemptions of property held in private ownership, but not to exemptions of public property.'

"In support of the application of the strict construction rule to such property, the learned author cites the case of *Board of Directors of Stinson Memorial Library v. Board of Review of Union County,* 248 Ill. 590, 94 N. E. 153, and, in support of the nonapplicability of the strict construction rule to such property, he cites the cases of *Pasadena v. Los Angeles County,* 182 Cal. 171, 187 Pac. 418, *State v. City of Columbia,* 115 S. C. 108, 104 S. E. 337, and *Commonwealth v. City of Richmond,* 16 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118."

In *Orange State Oil Co. v. Amos,* 100 Fla. 884, 130 So. 707, the court says:

"In respect to taxation of cities, however, the rule is otherwise. Inasmuch as taxation of public property would necessarily involve other taxation for the payment of taxes so laid, such property is usually excluded by implication from the operation of laws imposing general taxes, unless

there is a clear intent to include it. See *Trustees v. City of Trenton*, 30 N. J. Eq. 681; *City of Jackson v. State*, 156 Miss. 306, 126 So. 2; 2 Cooley, Taxation (4th ed.), sec. 621, In this respect our statute, sec. 897, Comp. Gen. Laws 1927, in so far as it relates to cities and counties is largely declaratory of the general rule independent of statute.

"Our constitution, art. 9, sec. 1, amongst other things, provides that the legislature shall prescribe such regulations as shall secure a just valuation of all 'property,' both real and personal, excepting such 'property' as 'may' be exempted by law for municipal and other enumerated purposes. That provision is permissive and relates only to the 'property' of municipalities. Section 897, Comp. Gen. Laws 1927, passed pursuant thereto, exempts all public 'property' of municipalities from taxation.

"That is a general exemption from 'property' taxes which clearly does not exclude indirect excise taxes, which were not regarded as excluded under the general principles of law of which section 897, *supra* is largely declaratory. *City of Portland v. Kozer*, 108 Or. 375, 217 Pac. 833; *United States v. Perkins*, 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. ed. 287; *In re Merriam*, 141 N. Y. 479, 36 N. E. 505; 1 Cooley, Taxation (3d ed.), p. 357, 37 Cyc. 1572.",

wherein was considered a license gas tax similar to ours, and the section 897 referred to corresponds to sec. 4, art. 7, of our Constitution, except it specifies: "used for public purposes," while ours makes no such distinction.

In *Re Delinquent Real Estate Tax Proceedings*, 182 Minn. 437, 234 N. W. 691, the court says:

"We have considered, but need not discuss, the claim of the county that the state owns the land in a proprietary, as distinguished from its sovereign capacity. If we were dealing with the property of one municipal corporation within the territory of another (as was the case in *City of Providence v. Hall*, 49 R. I. 230, 142 Atl. 156), the argument might have to be gone into. It need not be because here the ownership is that of the state itself. For the same rea-

son we do not stop to consider what, if any, difference there may be, between 'public purposes' and 'governmental purposes.'

"The argument for the county ignores an essential and inherent difference in respect to taxation between public property and private property. Public property, by reason alone of its ownership, is immune from taxation in the absence of . any expression of sovereign will otherwise. Private property, on the other hand, because of its ownership alone is subject to taxation in the absence of law to the contrary. So it is not accurate to speak of public property as exempt, for it is by nature, immune. Only private property, from which the tax burden has been lifted by express law and which otherwise would be subject to taxation as other private property, can be accurately considered the subject of exemption. It is by reason of express law that such property is exempt. Public property, on the other hand, remains immune from taxation in the absence of express and effective law declaring otherwise. This distinction is made in *Foster v. City of Duluth, supra,* and must control every understanding consideration of the difference between public property and private property in respect to their freedom from or subjection to ordinary taxation."

The state virtually admits that, to be applicable at all, the tax must be considered an excise tax, as distinguished from a license tax, and/or applied only to proprietary, as distinguished from governmental functions.

The history of municipal corporation law and taxation since territorial days through statehood demonstrates that taxation of municipal corporations or their properties or functions has been the exception. In fact, no instance has been called to our attention when, prior to this, any such similar attempt has been made or even urged.

"As originally enacted on January 27, 1854 (see General Laws of Oregon, compiled and annotated by M. P. Deady, p. 894, sec. 4), this exemption was defined by the words:

" 'All public or corporate property of the several counties, cities, villages, towns and school districts in this state, used or intended for corporate purposes.'

"So far as applicable to the exemption from taxation of real property belonging to a city, the statute remained in its original form until amended by chapter 268, Laws 1907, when the words, 'held under a contract for the purchase thereof,' were added. Hence, since 1854, this statute defining the exemption from taxation of real property belonging to the cities of this state has been in operation without amendment except the provision making taxable lands owned by a city which have been contracted to be sold by the city to a private individual, until amended in 1907, and, during all of that time, so far as known to us, no attempt has been made by any officer in the state to tax any of the public or corporate property of a city or other corporate bodies named in the statute. This contemporaneous construction placed upon the act by all of the departments and officers of the state is very persuasive upon the meaning of the statute and affords strong grounds against the placing of a different construction even if the language of the act would seem to indicate that such was the real meaning of the words used in the statute. . . . .

"Independently of this, however, the language of the statute is all public or corporate property of the city used or intended for corporate purposes. Where a statute defines as exempt from taxation all public or corporate property of a municipality, using the words 'public' and 'corporate' both, it would seem that it was intended to include all property of every nature belonging to the city, for if the word 'public,' as applied to property, was intended to include only such property as was held in a governmental capacity—that is, for a public use—then it would seem that all other property of the municipality and belonging to it would be regarded as corporate property. In any event, it is obvious that these platted lots which the city is attempting to dispose of and which when disposed of will become subject to taxation are included within the words, 'all pub-

lic or corporate property,' as used in the statute, and hence are exempt from taxation. The other words used in the statute to qualify the property to be exempt from taxation, 'used or intended for corporate purposes,' would not take this property out of the operation of the statute, for it is property which is held by the city for sale and when so sold the proceeds will be applied to the public revenues, and, being so held for said purpose, it is clear that it is being 'used or intended for corporate purposes.' " (*City of Portland v. Welch,* 126 Or. 293, 269 Pac. 868.)

 Clearly, therefore, the initiation of such change constitutes an exception to what has heretofore been the custom, not the granting of an exemption not heretofore recognized or allowed.

*Home Ins. Co. v. City Council,* 50 Ga. 530, 543:

"This contemporaneous, unbroken, practical exposition of the meaning of the constitution by all departments of the state government, should not be disregarded in the search for the true interpretation of the provisions we are considering."

 The general rule enunciated by this court with regard to whether revenue statutes should be construed as applying to municipal corporations or otherwise has been stated thus:

" 'General tax acts of a state are never, without the clearest words, held to include its own property or that of its municipal corporations, although not in terms exempted from taxation.' "

*State v. County of Minidoka,* 50 Ida, 419, 424, 298 Pac. 366, and in *State v. Reed,* 47 Ida. 131, 134, 272 Pac. 1008:

"With respect to exemptions from taxation of state property there is, therefore, no distinction between property acquired through the foreclosure of a mortgage, and that which may be said to be owned and held for purely governmental purposes."

Cities have had the specific right to construct municipal lighting plants and other public utilities since before statehood. Section 132, subsections 9 and 10, Charter of Boise,

granted 1866, page 25, Special and Local Laws in force 1887. Charter of Bellevue, granted 1883, sec. 293, subsection 14, page 82, Special and Local Laws in force 1887; lights, sec. 299, subsection 19; water, page 83; and by section 378, subsection 98, is made liable for its torts, page 97, yet no liability to pay taxes is expressed; section 389, subsection 109, build and maintain bridges and ferries, page 99. Charter of Lewiston, granted 1881, Special and Local Laws in force 1887; lighting streets, etc., section 634, subsection 6, page 148; waterworks, section 639, subsection 11, page 149; and by section 721, subsection 93, page 163, is made liable for its torts, yet no liability to pay taxes is expressed.

Cities have had such general right at least since 1901. (Sess. Laws 1901, p. 104, H. B. No. 41, sec. 36, now in sec. 49–1132, I. C. A.)

To apply the strict construction to sustain appellant, we must first determine that the legislature did not mean "license" when they said "license"; that the framers of the Constitution intended to distinguish in secs. 2 and/or 4, art. 7, between proprietary and governmental functions for revenue purposes, not doing so in words, however, when there were in existence at the time our Constitution was adopted other state Constitutions which as to property either expressly or apparently so distinguished[4] or expressly left exemptions to the legislature.[5]

---

[4] Arkansas, 1874, art. 16, sec. 5, 1 Thorpe's American Charters, Constitutions and Organic Laws (hereinafter designated as "Thorpe"), page 359. Georgia, 1877, art. 7, sec. 2, par. 2, 2 Thorpe, p. 864. Louisiana, 1879, art. 207, 3 Thorpe, p. 1505. Minnesota, 1857, art. 9, sec. 3, 4 Thorpe, p. 2012.

[5] Florida, 1868, art. 13, sec. 1, 2 Thorpe, p. 718; same, 1885, art. 9, sec. 1. Illinois, 1870, art. 9, sec. 3, 2 Thorpe, p. 1036. Indiana, 1851, art. 10, sec. 1, 2 Thorpe, p. 1087. Nevada, 1864, art. 10, sec. 1, 4 Thorpe, p. 2418. Ohio, 1851, art. 12, sec. 2, 5 Thorpe, pp. 2930, 2931. Oregon, 1857, art. 9, sec. 1, 5 Thorpe, pp. 3011, 3012. Pennsylvania, 1873, art. 9, sec. 1, 5 Thorpe, p. 3141. West Virginia, 1872, art. 10, sec. 1, 7 Thorpe, p. 4056.

Some courts under Constitutions similar to Idaho have made no such distinction,[6] while others have.[7]

■ We must also hold that the generation of electricity is not a governmental or public function in order to apply a statute otherwise not applicable, and then judge by a standard of construction that seems not to have been heretofore sanctioned in considering revenue laws and municipal corporations, in order to impose a tax on municipal corporations, which previously in this state has never been done. Even under the rule of statutory construction urged by the state, the intent of the statute is to be gleaned from its terms, purposes and the evident intent as to its scope and purpose.

" 'Whether a state or municipality or other corporation exercising a subdivision of its sovereignty is included by the terms of a statute—not being expressly named—must be determined by a consideration of the subject matter of the statute, its purpose and effect. Where the statute primarily refers to matters foreign to the ordinary functions of public corporations, and imposes burdens, duties or liabilities upon them without any corresponding benefits, the inference must be that it was not the legislative purpose that such corporations should be subject to its provisions.' " (*City of Jackson v. State*, 156 Miss. 306, 126 So. 2, 3.)

As to the argument against the state's position that the legislature intended the tax to apply to municipal corporations, is the designation given by the legislature, namely, a "license" tax, since sec. 2, art. 7, specifically provides that a "license" tax may not be imposed on municipal corpora-

---

6 California, 1879, art. 13, sec. 1, 1 Thorpe, p. 441; *City and County of San Francisco v. McGovern*, 28 Cal. App. 491, 152 Pac. 980; *State Land Settlement Board v. Henderson*, 197 Cal. 470, 241 Pac. 560; *Cypress Lawn Cemetery Assn. v. City and County of San Francisco*, (Cal. App.) 284 Pac. 506. Colorado, 1876, art. 10, sec. 4, 1 Thorpe, p. 497; *City of Colorado Springs v. Board of Commrs.*, 36 Colo. 231, 84 Pac. 1113; *Stewart v. City and County of Denver*, 70 Colo. 514, 202 Pac. 1085.

7 North Carolina, 1868, art. 5, sec. 6, 5 Thorpe, p. 2814; *Atlantic etc. R. Co. v. Board of Commrs.*, 75 N. C. 474.

tions. The state urges the name is immaterial, since it is what a tax really is, not what it is called, which determines.[8]

■■ Conceding such to be correct so far as the substance of the controversy is concerned, and conceding that the tax is an excise, as distinguished from a license tax, which classification is supported, not, however, without confusion of the terms, by authorities interpreting the same or kindred statutes,[9] the fact remains the legislature indicated their thought as to its nature, and consequent nonapplicability to municipal corporations under sec. 2, art. 7, by calling it what they did, when they could have designated it an "excise" tax, and thus removed this stumbling block; nor may we lightly disregard such legislative declaration.

"While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the law-making power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company."

[8] *Independent School Dist. v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893; *Educational Films Corp. v. Ward,* 282 U. S. 379, 51 Sup. Ct. 170, 75 L. ed. 400.

[9] *Gregg Dyeing Co. v. Query,* 166 S. C. 117, 164 S. E. 588; *City of Greenville v. Query,* 166 S. C. 281, 164 S. E. 844; *Eastern Air Transport Inc. v. South Carolina Tax Commission,* (S. C.) 52 Fed. (2d) 456; *Bowman v. Continental Oil Co.,* 256 U. S. 642, 41 Sup. Ct. 606, 65 L. ed. 1139; *Salt Lake City v. Christensen Co.,* 34 Utah, 38, 95 Pac. 523, 17 L. R. A., N. S., 898; *Wayne Merc. Co. v. Commissioners of Mt. Olive,* 161 N. C. 121, 76 S. E. 690, 49 L. R. A., N. S., 955; *Patton v. Brady,* 184 U. S. 608, 22 Sup. Ct. 493, 46 L. ed. 713; *Flint v. Stone Tracy Co.,* 220 U. S. 107, 31 Sup. Ct. 342, Ann. Cas. 1912B, 1312; 55 L. ed 389; *Amos v. Gunn,* 84 Fla. 285, 94 So. 615; *State v. Norval Hotel Co.,* 103 Ohio, 361, 133 N. E. 75, 19 A. L. R. 637; *Anthony v. Kozer,* 11 Fed. (2d) 641; *People v. Deep Rock Oil Corp.,* 343 Ill. 388, 175 N. E. 572; 1 Cooley, Taxation, 4th ed., sec. 42; 4 Cooley, Taxation, 4th ed., sec. 1670.

(*Flint v. Stone Tracy Co.*, 220 U. S. 107, 31 Sup. Ct. 342, 346, 55 L. ed. 389, 411, Ann. Cas. 1912B, 1312.)

In the quoted case the word "excise" was used; here it was "license," but the principle is the same, and the distinction between the two is urged by the state as vital, having depended on *Oliver Iron Min. Co. v. Lord*, 262 U. S. 172, 43 Sup. Ct. 526, 67 L. ed. 929, 935, as the foundation for *Utah Power & Light Co. v. Pfost*, 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038.

The state further attempts to remove this impediment by the proposition that sec. 2, art. 7, applies only to governmental, not proprietary, functions. The authorities are not unanimous on this point, some holding activities of this character taxable,[10] or governmental and not taxable,[11] or classify similar activities as devoted to public use or purpose, and therefore exempt,[12] or, in view of constitutional or statutory provisions, exempt such property regardless of use.[13]

Looking to the internal evidence, there are the following *indicia* favoring inclusion of municipal corporations: the use of the words "corporation" and "or other organization," compared with "corporation" in sec. 2, art. 7, might lead to the thought that the framers of the Constitution considered "corporations" would include municipal corporations, since an exception is made in sec. 2, art. 7, thus indicating that in the minds of the framers of the Constitution, if no exception had been noted, municipal corporations would

---

[10] *City of Lakeland v. Amos*, (Fla.) 143 So. 744; *City of Logansport v. Public Sevice Commission*, 202 Ind. 523, 177 N. E. 249, 76 A. L. R. 838.

[11] *Commonwealth v. Richmond*, 116 Va. 69, 81 S. E. 69, L. R. A. 1915A, 1118.

[12] *City of Dallas v. State*, (Tex. Civ. App.) 28 S. W. (2d) 937; *Collector of Taxes of Milton v. City of Boston*, 278 Mass. 274, 180 N. E. 116, 81 A. L. R. 1515, 2 Cooley, Taxation, 4th ed., sec. 638, p. 1339; same, sec. 639, p. 1341; 2 Pond, Public Utilities, 4th ed., secs. 409, 411, 415, 419; same, sec. 406; 4 Dillon, Municipal Corporations, 4th ed., secs. 1396, 1397.

[13] Note, 3 A. L. R. 1439, 1440 et seq.

have been included in the term "corporation," and certainly a municipal corporation is, disregarding *ejusdem generis,* "other organization" than those enumerated in the statute except corporation, and the respondent is engaged in the production of electricity. The word "corporations" in other statutes was evidently considered by the legislature to include municipal corporations. (*Vide,* secs. 29–101 and 59–104, I. C. A.)

Section 6–507, I. C. A., relied upon by the state, if anything, leans strongly away from their position, because if the legislature deemed it necessary to specifically include municipal corporations in a statute extending garnishment against municipal employees, it would seem more essential that municipal corporations should have been specifically mentioned when taxation was to be asserted against municipal corporations' activities.

Such comparisons are relatively of small value because there is no uniformity of phraseology running through the statutes, other acts indicating to the contrary, and more or less, each must be individually interpreted, and while it is urged that the above inconsistencies pointed out are not of importance (*City of Lakeland v. Amos, supra*), the inapplicability of other provisions in the statute to municipal corporations more than offset the above.

Municipal corporations are not mentioned in either the title or body of the act. Section 3 (b) requires the principal place of business to be given. A municipal corporation has, of course, only one place of business. Section 3 (e) asks who comprise the corporation. Would this mean as to a municipal corporation the individual, separately named citizens or inhabitants, or only the councilmen or officers, as the case might be? A municipal corporation has no directors, resident general agent or attorney-in-fact, and what certified copies would have to be filed under sec. 3 (f) showing the right to do business?

The statute says: "in addition to the licenses and taxes now provided by law." No taxes were then, or are now, being imposed (except the attempt herein) on municipal

corporations or their functions or activities. How could something be added to what did not exist? A new tax might be evolved or created, but not added.

Many cases are cited by appellants[14] upholding their contention that the words "person" and "corporation" include, or were held to mean, municipal corporations, and respondent presents authorities to the contrary.[15]

The most that can be deduced from these authorities for and against is that there is no uniform holding, and again we are merely relegated to a study of the particular statute and its setting, to ascertain the legislative intent.

Appellant relies on *Independent School Dist. v. Pfost, supra,* and the similarity of the language used, as declaratory by the court of the applicability of this statute to municipal corporations. It will, however, be observed that the requirements of sec. 3 herein must apply, if at all, to municipal corporations, while in the gas tax there construed, the requirements of sections similar, it is true, to sec. 3 herein, were held to apply not to the municipal corporation as actor, but as purchaser, so there is no inconsistency, the holding therein not being controlling or pertinent here. Furthermore, the tax there considered went into the road fund; here this tax is a substitute, in so far as it can be in amount,

---

[14] *City of Jackson v. State,* 156 Miss. 306, 126 So. 2; *Metropolitan R. Co. v. Dist. of Columbia,* 132 U. S. 1, 10 Sup. Ct. 19, 33 L. ed. 231; *Lloyd v. New York,* 5 N. Y. 369, 55 Am. Dec. 347; *City of Sacramento v. Industrial Acc. Com.,* 74 Cal. App. 386, 240 Pac. 792; *United States v. Perkins,* 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. ed. 287; *In re Merriam's Estate,* 141 N. Y. 479, 36 N. E. 505; *Mather v. City of Ottawa,* 114 Ill. 659, 3 N. E. 216; 1 McQuillin, Munic. Corp., 2d ed., sec. 125; 1 Dillon, Munic. Corp., 5th ed., sec. 30.

[15] *Denman v. City of Idaho Falls,* 51 Ida. 118, 4 Pac. 361; *Donahue v. Newburyport,* 211 Mass. 561, 98 N. E. 1081, Ann. Cas. 1913B, 742; *State of Rhode Island v. Narragansett,* 16 R. I. 424, 16 Atl. 901, 3 L. R. A. 295; *Switzer v. City of Wellington,* 40 Kan. 250, 19 Pac. 620, 10 Am. St. 196; *County of Sherman v. Simonds,* 109 U. S. 735, 3 Sup. Ct. 502, 27 L. ed. 1093; *In re Hamilton,* 148 N. Y. 310, 42 N. E. 717; *Yazoo & M. V. R. Co. v. Board of Levee Commrs.,* 37 Fed. 24; *Puget Sound Traction Co. v. Tacoma,* 217 Fed. 265; *Moscow Hardware Co. v. Colson,* 158 Fed. 199.

for a property tax, which at least raises a doubt as to the intent of the legislature to have this tax apply to municipal corporations, when thus viewed, considering sec. 4, art. 7. We do not follow this observation, nor depend upon it further than as it affects this one phase, i. e., legislative intent.

Payment for the gas purchased by the school district in *Independent School Dist. v. Pfost, supra,* was like the payment indirectly of any tax on any commodity and so given as a ground in *City of Portland v. Kozer,* 108 Or. 375, 217 Pac. 833, and cases to the same effect on this point. (*People v. City and County of Denver,* 84 Colo. 576, 272 Pac. 629; *Orange State Oil Co. v. Amos,* 100 Fla. 884, 130 So. 707; *Anthony v. Kozer,* 11 Fed. (2d) 641; *State v. City of Sioux Falls,* (S. D.) 244 N. W. 365; *City of Greenville v. Query,* 166 S. C. 281, 164 S. E. 844; *City of Louisville v. Cromwell,* 233 Ky. 828, 27 S. W. (2d) 377.)

The Federal Electricity Excise Tax, chap. 209, sec. 616, p. 266, Sess. Laws First Session, 72d Congress, expressly provides that the tax should be paid by the consumer, making certain exceptions:

"There is hereby imposed a tax equivalent to 3 per centum of the amount paid on or after the fifteenth day after the date of the enactment of this Act, for electrical energy for domestic or commercial consumption furnished after such date and before July 1, 1934, to be paid by the person paying for such electrical energy and to be collected by the vendor."

If one distinguishing feature of an excise tax be that it is always paid by the consumer, and so intended, as indicated in some decisions (*Panhandle Oil Co. v. State of Mississippi,* 277 U. S. 218, 48 Sup. Ct. 451, 72 L. ed. 857, 56 A. L. R. 583), the requirement in the acts above noted would seem to have been superfluous. If not superfluous, then since our statute was silent and the federal tax did so provide, it would seem on a parity of construction that our act was designed to place the burden on the producer and not the consumer. If on the producer, it is then a tax on the municipal corporation. If on the consumer, nevertheless, the

tax is first imposed on the municipal corporation, irrespective, so far as the statute is concerned, of whether the consumer pays it or not. We may take judicial notice that the federal tax has been added as a distinct and separate item on the electric bills in compliance with the law, while the state tax has not been.

If, and *Utah Power & Light Co. v. Pfost, supra,* held it was, an excise tax on the manufacture of electricity, it should be so considered in every case; so if an excise on a municipal function, even though on a proprietary function, the rule as to exception, not exemption, prevails. Thus, even though the tax is only in the first instance imposed on the municipal corporation and passed on to the consumer, it is imposing a burden, dependent upon its applicability to municipal corporations on one of two functions, which on the face of the Constitution are not recognized as distinctive, hence, it is not governed by the rule of exemption, but exception to sec. 2, art. 7, and/or by inference or comparison with sec. 4, art. 7. The rule as applied, requires that unless it clearly was intended by the act, and so stated, it does not apply.

In *City of Jackson v. State, supra,* relied upon by the state to support their contention in the particular considered, the opinion was based on sec. 1590, Code 1906 (sec. 1422, Hemingway's Code 1927), as follows:

"The term 'person' when used in any statute, shall apply to artificial as well as natural persons; and when used to designate the party whose property may be the subject of offense, shall include the United States, this state, or any other state, territory, or country, and any county, city, town or village which may lawfully own property in this state; also all public and private corporations, as well as individuals.",

thus containing provisions as to municipal corporations not in sec. 70–114, I. C. A. The state gas tax there considered was likewise different from ours.

So in *City of Lakeland v. Amos, supra,* the Constitution of Florida, sec. 16, art. 16, and sec. 1, art. 9, leaves all exemptions or exceptions of the taxation of municipal corporations

properly to the legislature, and the act in question specifically mentioned municipal corporations.

"The words, 'including municipalities,' appear in the first section of the act, which expressly and specifically shows a legislative intent that the language, 'all corporations . . . . receiving payment for electricity for light,' etc., shall include all municipal corporations that are 'receiving payment for electricity for light,' etc. Wherever the word 'corporation' is used in subsequent sections of the act, it by necessary intendment includes every municipal corporation which is engaged in the business that is taxed; and the word 'company' as used in the act, has reference to any and all corporations that are included in the provisions of the act. The act is not inoperative as to municipal corporations for indefiniteness or ambiguity." (*City of Lakeland v. Amos, supra.*)

The above analysis justifies us in concluding that the tax is such a direct initial burden on the municipal corporation, though ultimately paid by the consumer, as all taxes are, the record, however, as to this being silent, as to require the rule of exception to taxation, not exemption from, to be the proper standard to be applied, and under this gauge, the language of the statute is insufficient to show that the legislature intended it to apply to municipal corporations.

The inauguration of such a far-reaching program as may result from levying excise taxes on municipal corporations (1931 Or. Laws, p. 890, H. J. R. No. 18; Pond, Public Utilities, 4th ed., sec. 400), though confined to proprietary functions, if such be constitutional, which we do not decide, should not depend on surmise or conjecture as to whether the legislature so intended. (*State v. Armstrong,* 38 Ida. 493, 501, 225 Pac. 491, 33 A. L. R. 835; *State v. Burleigh County,* 55 N. D. 1, 212 N. W. 217.)

No constitutional hazards have been suggested, if the act does not apply to municipal corporations, while a most serious one is vigorously urged if it does, and where of two constructions one is doubtful or leads to possible un-

constitutional results, and the other does not, the latter will be adopted.

The conclusion that the act does not sufficiently indicate it was intended to apply to municipal corporations renders it unnecessary to decide whether, if it was intended to apply, it could apply (*Jack v. Village of Grangeville*, 9 Ida. 291, 316, 74 Pac. 969; *State v. Baker*, 6 Ida. 496, 56 Pac. 81; *Howell v. Board of Commrs.*, 6 Ida. 154, 53 Pac. 542; *In re Marshall*, 6 Ida. 516, 56 Pac. 470; *McGinness v. Davis*, 7 Ida. 665, 65 Pac. 364; *State v. Jones*, 9 Ida. 693, 75 Pac. 819; *Mills Novelty Co. v. Dunbar*, 11 Ida. 671, 83 Pac. 932; *Logan v. Carter*, 49 Ida. 393, 288 Pac. 424; *In re Allmon*, 50 Ida. 223, 294 Pac. 528), and on that point we neither indicate nor make any decision.

■ Judgment affirmed, except that, of course, costs may not be allowed against appellants. (*Chicago etc. R. Co. v. Public Utilities Com.*, 47 Ida. 346, 275 Pac. 780; sec. 65–2201, I. C. A.)

Budge, C. J., Wernette, J., and Babcock and Stevens, D. JJ., concur.